Bobby Ray ALLEN, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 77–1838

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 1, 1978.

---

\* Rule 18, 5 Cir.;  see *Isbell Enterprises, Inc.  v.  Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Bobby Ray Allen, pro se.

John L. Hill, Atty. Gen., Austin, Tex., W. Barton Boling, Asst. Atty. Gen., David M. Kendall, Jr., 1st Asst. Atty. Gen., Joe B. Dibrell, El Paso, Tex., Gilbert J. Pena, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before BROWN, Chief Judge, RONEY and HILL, Circuit Judges.

JOHN R. BROWN, Chief Judge:

A jury convicted Bobby Ray Allen in Texas state court of robbery by assault. Under the Texas habitual offenders statute [1] his sentence was enhanced to life imprisonment. After exhausting state remedies, Allen petitioned the United States District Court for a writ of habeas corpus, 28 U.S.C. § 2254. On November 9, 1976, with-

1. Tex.Penal Code Ann. § 12.42 (1974).

out holding an evidentiary hearing, the District Court entered an order denying the writ. On appeal Allen contends (i) that a pretrial showup confrontation was so suggestive as to cause a misidentification in violation of the Fourteenth Amendment's due process clause, and (ii) that prior convictions were unconstitutionally used to enhance his sentence. We affirm the District Court's denial of habeas relief.

Shortly after 11:00 p.m. on March 13, 1973, two men entered a motel in Abilene, Texas and at gunpoint robbed the motel clerk, Charles C. Burke, taking his watch, wallet, television set, and money from the cash register. The robbers forced Burke into an adjoining room, threatened to kill him, and bound him with tape. Within minutes Burke managed to free himself and to observe his assailants fleeing in a red Thunderbird automobile. Burke then telephoned the police, providing a general description of the robbers, the stolen property, the escape vehicle, and the direction in which the men had fled. A patrol cruiser almost immediately intercepted a car matching Burke's description, discovered a television set in the back seat, arrested Allen and a companion, and transported the two men to the station house where they were confined in separate cells. The police then notified Burke that they had recovered his stolen merchandise and requested that he come to the station to identify the suspects.

Within an hour after the robbery, Burke entered the station house. Inside the station Burke saw his television sitting on a counter. He was taken to the detectives' quarters where he apparently remained for 15 to 30 minutes. An officer then led Burke downstairs into a restricted hall for the stated purpose of identifying the suspects. Once downstairs it is unclear exactly what transpired.

The suspects were apparently removed from their cells and, without being told anything, were taken for one suspect lineups (showups) in the hallway. The officer in charge of the investigation admitted that the police had no intention whatsoever of constructing a lineup. Allen was escorted by a policeman into the hall where he confronted Burke. According to Burke, the suspects were brought separately into the hallway. The officer in charge asked Burke whether he recognized anyone in the hall and Burke responded on each occasion by identifying both men as his assailants. While it is unclear exactly how many persons were in the hallway at the time, it is known that only authorized police personnel were permitted in this area.

In his pretrial Motion to Suppress In-Court Identification, Allen complained that "any In-Court Identification made by the complaining party, Charles Burke, is and would be impermissibly suggested to the complaining party by this out of court confrontation and therefore would not be admissible as an In-Court Identification even if the complaining party should testify that this were an independent recollection because of the impermissibly suggestive lineup and one on one confrontation." In accord with the practices established within this Circuit,[2] the state trial judge held a

2. In *Simmons v. United States*, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, a pretrial photo identification procedure was challenged as violative of due process. Addressing the problems created in the trial courts by the wake of *Simmons*, this Court suggested adoption of the following practice which is equally applicable to all genre of identification techniques.

> With the hope that it might prove of assistance to the District Judges of this Circuit in developing a uniform approach to the trial of cases in which a *Simmons* issue is present, we offer the following suggested procedure. Prior to offering the in-court identification before the jury, the trial judge should be accorded an opportunity out of the presence of the jury to determine if the picture spread in the particular case was impermissibly suggestive either in the photographs used or the manner or number of times they are displayed. If the judge makes such a determination, he then should determine if the impermissibly suggestive picture spread gives rise to a "likelihood of irreparable misidentification." If both elements are found, *Simmons* prohibits the use of the in-court identification. However, if the judge does not find as a matter of law both that the picture spread was impermissibly suggestive *and*

suppression hearing immediately prior to trial with no jury present. The purpose of the hearing was to determine whether or not, in the wake of the suggestive showup confrontation, a substantial likelihood of irreparable misidentification existed which would warrant exclusion of any identification made by Burke at trial.

At the suppression hearing Burke was asked to identify his assailants. In an apparent effort to secure a positive response from Burke, the prosecutor stood behind Allen, who was seated at the defense table, and asked Burke whether he recognized Allen as his assailant. Burke then identified Allen stating that his identification was not enhanced by the pretrial confrontation and that he "wouldn't forget either [suspect] in a hundred years." Upon further examination Burke stated that he recognized Allen as a hotel guest from the previous night. Burke also testified that upon entering the office at the time of the robbery Allen stated, "I told you I would be back, your beds were so comfortable." The trial judge concluded that an in-court iden-

tification would be admissible as an independent identification untainted by the station house confrontation. At trial Burke made the in-court identification here challenged and the pretrial identification was never admitted before the jury. On direct appeal in an unpublished opinion the Texas Court of Criminal Appeals affirmed Allen's conviction.[3] Subsequently, under application for habeas relief, the District Court found no due process violation.

### The Pretrial Confrontation

The Supreme Court established the due process standard against which police identification procedures are to be measured in *Stovall v. Denno*, 1967, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. A violation of due process occurs when, under "the totality of the circumstances," a confrontation procedure is "unnecessarily suggestive and conducive to irreparable mistaken identification."[4] Within this Court the due process standard has developed into a bipartite inquiry.[5] *United States v. Smith*, 5 Cir., 1977, 546 F.2d 1275; *Blood-*

---

that there is a substantial likelihood of irreparable misidentification, the in-court identification may be put before the jury. In such a case the defendant may use the facts of the picture spread for cross-examination purposes to attack the credibility of the identifying witness. The foregoing procedure will not only have the salutary effect of avoiding situations in which the District Judge must solemnly instruct the jury to disregard vital and unforgettable evidence, but will also save the defendant, the Hobson's choice of whether to attack the in-court identification by attacking a prior photographic identification that might wind up being upheld thereby reinforcing the identification of the defendant.

*United States v. Sutherland*, 5 Cir., 1970, 428 F.2d 1152, 1155 (footnote omitted).

3. Allen's codefendant, Rush O. Nichols, similarly pursued habeas relief. This Court earlier affirmed the denial of Nichols' writ in *Nichols v. Estelle*, 5 Cir., 1977, 556 F.2d 1330.

4. In *Simmons v. United States*, 1968, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, involving a pretrial photo identification, the Court phrased the test as whether the identification procedure "was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384, 88 S.Ct. at 971. The *Stovall* phraseology was sub-

sequently repeated in *Foster v. California*, 1967, 394 U.S. 440, 442, 89 S.Ct. 1127, 22 L.Ed.2d 402. Both formulations are used in *Neil v. Biggers*, 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 and are referred to in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140. Although this Circuit has utilized the *Simmons* formulation more often, the two phrasings represent different articulations of the same standard and we will use the original *Stovall* language. The *Stovall* formulation of "*unnecessarily* suggestive" seems to imply a duty on the part of the police to minimize suggestiveness. *United States v. Jones*, 1975, 170 U.S.App.D.C. 362, 366, 517 F.2d 176, 180.

5. Although this two-tier formulation has developed exclusively within the context of photographic identifications, it is equally applicable to situations, such as the present, where other types of confrontation procedures have been utilized since it is the procedure itself which is being evaluated. The Supreme Court has clearly developed a single due process standard for evaluating different types of procedures. See the cases cited in *Neil v. Biggers*, 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 and *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140.

*worth v. Hopper*, 5 Cir., 1976, 539 F.2d 1382; *United States v. Gidley*, 5 Cir., 1976, 527 F.2d 1345. First, as a threshold inquiry, the Court must decide whether the identification procedure was unnecessarily suggestive. A finding of impermissible suggestiveness raises concern over the reliability of identification and triggers closer scrutiny by the Court to determine whether such a procedure created a substantial risk of misidentification. *United States v. Smith, supra* at 1279; *United States v. Gidley, supra* at 1350.[6]

■ Undoubtedly, the confrontation procedure utilized by the police in this case was inherently suggestive. As pointed out by the Supreme Court in *Stovall*,

> "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned." 388 U.S. at 302, 87 S.Ct. at 1972.

This Court, along with other Circuits,[7] has shown reluctance to encourage the use of showups. *United States v. Abshire*, 5 Cir., 1972, 471 F.2d 116, 120 (Judge Godbold specially concurring).

We seek to encourage police activity which will minimize and not aggravate the suggestiveness of identification procedures. Here, as must always be the case, the police should have made an effort to construct a lineup or explain why a lineup could not be constructed. Similarly, the police should avoid unduly influencing witnesses. In the present case Burke was first allowed to see his stolen property. The police also made comments which could only increase Burke's expectation of seeing his assailant.[8] Finally, the police could have avoided arranging a showup confrontation deep within the police building where the suspect would be surrounded only by law enforcement personnel.[9] Considered together as they occurred, these police practices heightened the suggestiveness of the confrontation.

■ The record offers some indication, however, that the confrontation was *not unnecessarily* suggestive. Exigent circumstances may afford some justification for the use of suggestive procedures. *United States v. Abshire*, 5 Cir., 1972, 471 F.2d 116, 120 (Judge Godbold specially concurring). *See also United States ex rel. Kirby v. Sturges*, 7 Cir., 1975, 510 F.2d 397, 403–04. Although on appeal the State offered no justification for the procedure utilized, at trial the officer in charge of the investigation indicated that "we wanted to make sure we had the right men." It has been recognized that showups prompted by the need for immediate identification may "promote fairness by enhancing reliability of the identifications and permit expeditious release of innocent subjects." *United States v. Wilson*, 1970, 140 U.S.App.D.C.

---

**6.** In the absence of suggestive procedure, the reliability of an identification may be challenged in the traditional manner before a jury in the courtroom by attacking the credibility of the witnesses. As we said recently, "[o]nly when the eye witness identification is unreliable because of suggestive lineup procedures should a Court rule that the evidence is constitutionally inadmissible as a matter of law." *Caver v. Alabama*, 5 Cir., 1976, 537 F.2d 1333, 1335.

**7.** For example, the D.C. Circuit has recognized that "confrontations in which a single suspect is viewed in the custody of the police are highly suggestive," *United States v. Jones*, 1975, 170 U.S.App.D.C. 362, 365, 517 F.2d 176, 179 *quoting Russell v. United States*, 1969, 133 U.S.App. D.C. 77, 81, 408 F.2d 1280, 1284. The Seventh Circuit has accepted the proposition that "significant suggestion is inherent in the use of any showup . . .", *United States ex rel. Kirby v. Sturges*, 7 Cir., 1975, 510 F.2d 397, 403. Similarly, the Eighth Circuit has warned that "showing only a single suspect to the witness is 'the most suggestive and, therefore, the most objectionable method of pretrial identification'." *Sanchell v. Parratt*, 8 Cir., 1976, 530 F.2d 286, 294 *quoting United States v. Dailey*, 8 Cir., 1975, 524 F.2d 911, 914.

**8.** In another confrontation case this Court, in evaluating the suggestiveness of a police procedure, considered it relevant that the witness had not been told that the police had any suspects. *United States v. Henderson*, 5 Cir., 1973, 489 F.2d 802, 804–05.

**9.** See *Stanley v. Cox*, 4 Cir., 1973, 486 F.2d 48, 52–53.

331, 332–33, 435 F.2d 403, 404–405.[10]  Additionally, where the innocent have been mistakenly apprehended, prompt identification allows the police to realize their error and to continue their search while the criminal is still within easy reach.

■ In the present case, the showup occurred within one and one-half hours after the crime.  Consequently, some justification for the procedure utilized derives from the interests served by rapid crime solution.  Although we fully commend prompt police action which leads to the quick and certain apprehension of the guilty,[11] under the circumstances of this case due process considerations compel us to examine the reliability of the identification.  Having concluded that the procedure used in this case was close\ to the mark as unnecessarily suggestive, which we assume without deciding, we turn now to determine the reliability of the identification.

*The Reliability Of The Identification*

■ In *Manson v. Brathwaite*, 1977, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140, the Supreme Court emphasized that "reliability is the linchpin in determining the admissibility of identification testimony . . ." 432 U.S. at 114, 97 S.Ct. at 2253.  Unques-tionably, Supreme Court jurisprudence attaches overriding importance to the reliability factor in appraising the totality of the circumstances.[12]  *Brathwaite* reaffirms that the reliability determination rests upon evaluation of the factors enumerated in *Neil v. Biggers*, 1972, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401.  The factors considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation."  409 U.S. at 199–200, 93 S.Ct. at 382.  See also *Manson v. Brathwaite*, 1977, 432 U.S. at 114, 97 S.Ct. at 2253.[13]  Then "[a]gainst these factors is to be weighed the corrupting effect of the suggestive identification itself" in deciding whether due process has been observed.  *Manson v. Brathwaite*, 1977, 432 U.S. at 114, 97 S.Ct. at 2253.

■ An examination of these factors in this case leads us to conclude that the District Court could properly hold that Burke's identification of Allen was sufficiently reliable so as to outweigh the corruptive effect of the asserted suggestive confrontation.  Burke had an adequate opportunity to view

---

10.  In *Bates v. United States*, 1968, 132 U.S. App.D.C. 36, 405 F.2d 1104, then Judge Burger stated that

"[t]here is no prohibition against a viewing of a suspect alone in what is called a 'one-man showup' when this occurs near the time of the alleged criminal act;  such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy."

*Id.* 132 U.S.App.D.C. at 38, 405 F.2d at 1106.  This rule was approved and restated verbatim in *Mock v. Rose*, 6 Cir., 1972, 472 F.2d 619, 621, *cert. denied*, 411 U.S. 971, 93 S.Ct. 2165, 36 L.Ed.2d 693.  Other exigent circumstances which may afford some justification for the utilization of a showup include a *Stovall* type situation where the witness is unable to participate in a lineup, a situation as in *Simmons v. United States, supra*, where the suspect's unusual physical characteristics contributed to the impossibility of constructing a lineup with reasonably comparable subjects, and the case of the contumacious suspect whose rebellious action in a lineup would focus undue attention on him.

11.  In a similar case where speed of police action was emphasized, *Marden v. Purdy*, 5 Cir., 1969, 409 F.2d 784, 786, we found no violation of due process under the totality of the circumstances where a suspect was arrested immediately after a robbery a short distance from the scene and was driven back to the scene where he was identified by the victim and another witness.

12.  *Manson v. Brathwaite*, 1977, 432 U.S. at 106, n.9, 97 S.Ct. at 2249, n.9;  *Neil v. Biggers*, 1972, 409 U.S. 188, 201, 93 S.Ct. 375, 34 L.Ed.2d 401.  See also *Coleman v. Alabama*, 1970, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387.

13.  This Circuit on numerous past occasions has utilized the *Biggers* criteria in evaluating the reliability of identification confrontations.  See, e. g., *Bloodworth v. Hopper*, 5 Cir., 1976, 539 F.2d 1382, 1384;  *United States v. Smith*, 5 Cir., 1977, 546 F.2d 1275, 1282;  *United States v. Gidley*, 5 Cir., 1976, 527 F.2d 1345, 1351.

Allen at close range under good lighting for several minutes before he was bound with tape. Burke was attentive to Allen because he recognized him as one who had rented a room on the previous night. Also, Burke's description of his assailants was given to police within minutes after the robbery, thereby enhancing its accuracy. In addition, Burke provided even more relevant information regarding the color and make of the car in which his assailants fled.[14] At the pretrial suppression hearing Burke expressed a high level of certainty as to his identification of Allen, testifying that he "wouldn't forget either [suspect] in a hundred years." Finally, the showup occurred within one and one-half hours after the crime. We do not have here the passage of a substantial amount of time which could affect the reliability of the identification. Consequently, although the showup confrontation was suggestive and should be viewed with doubts, these indicators of Burke's ability to make an accurate identification are not outweighed by the corrupting effect of the supposed unnecessarily suggestive showup.

■ Prior to *Brathwaite*, several Circuits [15] had adopted a rule whereby testimony resulting from an unnecessarily suggestive pretrial identification would automatically be excluded from trial. Such a per se approach, however, did permit the admission of a subsequent in-court identification if that identification was determined to be reliable.[16] The Supreme Court in *Brathwaite* rejected the per se approach in favor of a totality of the circumstances approach. 432 U.S. at 112, 97 S.Ct. at 2252. Under the totality approach the admissibility of pretrial and in-court identification alike are governed by a single due process standard which accepts the reliability of the identification as the principal ingredient to be evaluated.[17] Therefore, under the totality approach a determination that the challenged identification is reliable means that testimony as to it and any identification in its wake is admissible.[18]

In the present case only an in-court identification was introduced. While no error was committed by admitting such evidence due to its exceeding reliability, we cannot resist pointing out some questionable practices in the suppression hearing, such as viewing Allen at the counsel table, the prosecutor standing behind him, etc. Notwithstanding such actions the state trial judge made no objections to the prosecution's actions and ruled that an in-court identification would be admissible. The same conclusion was implicit in the federal District Judge's holding that the identification was reliable.

### The Enhancement

Allen also contends that he was denied due process and equal protection when a prior conviction was used to enhance his punishment under the Texas habitual of-

**14.** This information, just as a description of a criminal's clothes or other distinguishing characteristics, is pertinent to the accuracy of the description. Burke apparently told police that his assailants "were driving a red Thunderbird, headed east, two white men, past middle age." Also, no claim has been made that Allen did not possess the physical characteristics described.

**15.** E. g., *United States v. Jones*, 1975, 170 U.S. App.D.C. 362, 517 F.2d 176; *Brathwaite v. Manson*, 2 Cir., 1975, 527 F.2d 363, *rev'd*, 1977, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140.

**16.** Our cases appear to have implicitly followed the per se approach although this is unclear because only in-court identifications are questioned in those cases. Language from our opinions, however, strongly suggests that pretrial identifications would be excluded, e. g.,

*Bloodworth v. Hopper*, 5 Cir., 1976, 539 F.2d 1382, 1383; *United States v. Sutherland*, 5 Cir., 1970, 428 F.2d 1152, 1155, while in-court identifications could be admitted if found to be independent of the confrontation's suggestiveness. *United States v. Gidley*, 5 Cir., 1976, 527 F.2d 1345, 1350; *Kelley v. Estelle*, 5 Cir., 1975, 521 F.2d 238, 240. Our cases which discuss the admissibility of in-court identifications with independent sources of reliability clearly apply the *Biggers* criteria and, consequently, suggest that we had adopted the per se approach.

**17.** *Manson v. Brathwaite*, 1977, 432 U.S. at 106 n.9, 97 S.Ct. at 2249 n.9.

**18.** *Manson v. Brathwaite*, 1977, 432 U.S. at 110, 97 S.Ct. at 2251, and n.10.

fenders statute. In *Nichols v. Estelle*, 5 Cir., 1977, 556 F.2d 1330, Allen's co-defendant raised the identical argument and this Court found that such a contention failed to present a basis for habeas corpus relief. We find the reasoning and disposition of that case controlling. See also *Bradly v. Beto*, 5 Cir., 1973, 473 F.2d 1039; *Willeford v. Estelle*, 5 Cir., 1976, 538 F.2d 1194.

■ In relation to his second contention, Allen's reply brief raised new allegations. Allen alleges that he was originally indicted for the offense of robbery by firearms but was offered 15 years in exchange for a plea of guilty. Accordingly to Allen, he was warned that if he did not plead guilty he would be reindicted and that an enhancement count would be included in the indictment. Allen claims he refused to enter a plea of guilty, was reindicted, and received a life sentence. On appeal to this Court Allen argues for the first time that his reindictment and life sentence resulted from vindictiveness on the part of the state because he exercised his right of trial by jury. This claim is not asserted directly or indirectly in the habeas petition no matter how liberally read. Because Allen has failed to exhaust available state court remedies with respect to this aspect of his second contention we express no opinion as to its merits. The decision of the District Court was correct.

AFFIRMED.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.