Jimmy FRANK, Petitioner-Appellant,

v.

Frank BLACKBURN, Warden, Louisiana State Penitentiary, Respondent-Appellee.

No. 78–3452.

United States Court of Appeals, Fifth Circuit.

Nov. 2, 1979.

Rehearing En Banc Granted Jan. 7, 1980.

J. Donice Alverson, New Orleans, La. (Court-appointed), for petitioner-appellant.

Robert Brinkman, Asst. Dist. Atty., Opelousas, La., for respondent-appellee.

Before GEWIN, AINSWORTH and REAVLEY, Circuit Judges.

REAVLEY, Circuit Judge:

Jimmy Frank was convicted by a jury in a Louisiana state court of armed robbery and sentenced by the court to thirty-three years in prison. In this 28 U.S.C. § 2254 suit, Frank attacks his conviction on the grounds that identification testimony was inadmissible and that the prosecutor's argument referred to Frank's failure to testify. He attacks the sentence on the ground that the trial judge impermissibly increased the term of confinement because Frank rejected a plea bargain offer and elected to stand trial. The federal trial court denied habeas corpus. We do not find fault with the conviction, but we remand this cause to the federal trial court to await and insure resentencing of Frank by the Louisiana court.

### FACTS

Jimmy Frank was arrested within seven blocks of the Kajun Kitchen Restaurant shortly after it was robbed. The robber, a black male with a goatee, wore a coat, a

knit cap, and sunglasses. Frank, a black male with a goatee, had a coat, a knit cap, and sunglasses in his possession when he was arrested. The robber took a twenty dollar bill, three fives, and some ones; Frank had a twenty, three fives, and nine ones in his possession. The robber was armed with a gun; no gun was found on Frank. The restaurant was robbed on Sunday night. On Saturday, Frank had told an auto mechanic he would pay him the $42.00 he owed for work done on Frank's car. When arrested, Frank had $44.00.

## SUGGESTIVE IDENTIFICATION

Frank contends that the procedures by which he was identified were unnecessarily suggestive and therefore deprived him of due process. Frank was fully apprised of his *Miranda* rights when the police apprehended him and no claim is presented of an involuntary waiver of counsel. Immediately after his arrest, Frank was taken to the Kajun Kitchen and presented before Linda Young, an employee of the restaurant who was the robbery victim. At first appearance, Young was unable to identify Frank as the perpetrator of the crime. Young was then led into another room while Frank donned the clothing in his possession: the knit cap, coat, and sunglasses, items also worn by the robber. On reexamination, Young identified Frank as the robber with some hesitation and reservation. Frank contends that this one-on-one confrontation was impermissibly suggestive.

The Supreme Court has stated that "a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it . . . ." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1206 (1967). A violation occurs when the procedure is "unnecessarily suggestive and conducive to irreparable mistaken identification." *Id.* As this circuit explained in *Allen v. Estelle*, 568 F.2d 1108 (5th Cir. 1978), the due process requirement takes two steps:

First, as a threshold inquiry, the Court must decide whether the identification procedure was unnecessarily suggestive. A finding of impermissible suggestiveness raises concern over the reliability of identification and triggers closer scrutiny by the Court to determine whether such a procedure created a substantial risk of misidentification.

*Id.* at 1112; *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

In this case Frank fails to clear the first hurdle. Although "[t]he practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned," *Stovall v. Denno*, 388 U.S. at 302, 87 S.Ct. at 1972, exigent circumstances, such as "the interest served by rapid crime solution," may justify one-on-one confrontations. *Allen v. Estelle, supra* at 1112–13. Defendant was apprehended less than thirty minutes after the robbery seven blocks from the restaurant by police responding to a broadcast description of the suspect. Under these circumstances an immediate confrontation not only prevents the suspect from substantially altering his appearance and allows the witness to test her recollection while her memory is still fresh, but permits "expeditious release of innocent subjects." *United States v. Wilson*, 140 U.S.App.D.C. 331, 333, 435 F.2d 403, 405 (D.C.Cir.1970). "Additionally, where the innocent have been mistakenly apprehended, prompt identification allows the police to realize their error and to continue their search while the criminal is still within easy reach." *Allen v. Estelle, supra* at 1112–13.

No evidence is presented that indicates that the police acted improperly in utilizing this identification procedure. An accused can be required to don clothing, utter words, or in other manners exhibit physical characteristics without running afoul of the fifth amendment right against self incrimination. *United States v. Wade*, 338 U.S. 218, 221–23, 87 S.Ct. 1926, 18 L.Ed.2d 1149, 1154–55 (1967); *United*

*States v. Wilcox*, 507 F.2d 364, 367 (4th Cir. 1974), *cert. denied*, 420 U.S. 979, 95 S.Ct. 1408, 43 L.Ed.2d 661 (1975). In the present case, there were no words or actions by police aggravating the suggestiveness of the confrontation. The suspect was asked to don clothing in his possession at the time of his arrest and was attired out of the presence of the witness. The confrontation was not impermissibly suggestive.

We add that Frank failed to establish any question concerning the reliability of his identification. The Supreme Court has identified five factors bearing on reliability: (1) the opportunity to view; (2) the degree of attention; (3) the accuracy of the description; (4) the witness' level of certainty; (5) the time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 114–15, 97 S.Ct. 2243, 53 L.Ed.2d 149 (1977); *Neil v. Biggers*, 409 U.S. at 199–200, 93 S.Ct. 375.

With the possible exception of factor number four, the level of certainty, a matter fully explored on cross-examination at trial, each factor supported the reliability of this identification. The witness, Linda Young, observed Frank when he· entered the restaurant, walked to the cigarette machine, wandered into the dining room, and then returned to the telephone close to the counter where the witness was working. Apparently concerned at Frank's seemingly aimless path, she asked him if she could help him. Young stood directly in front of Frank, who was approximately one and one-half feet away, during the course of the robbery. Her description of the robber prompted police to arrest Frank who was carrying clothing identical to the robber's. The time between the crime and the confrontation was less than thirty minutes.

■ As noted earlier, Young was unable to identify Frank as the robber on first presentation. Even after Frank was dressed with the articles in his possession, Young's identification was made with reservations. The tentativeness of Young's identification was fully explored on cross-examination and, in any event, "[t]he fact that an identification is less than positive does not render it inadmissible." *United States v. Malatesta*, 583 F.2d 748, 758 (5th Cir. 1978), *modified on other grounds*, 590 F.2d 1379 (en banc), *cert. denied sub nom. Bertolotti v. United States*, 440 U.S. 962, 99 S.Ct. 1508, 59 L.Ed.2d 777 (1979). The admission of Young's identification testimony did not deprive Frank of due process.

## PROSECUTORIAL COMMENT

During closing argument the prosecutor made the following statement:

> The next aspect of this case I think that we have to consider very seriously, is that the defendant's defense in this case is an alibi, and the judge is going to explain to you that an alibi, just .like any other specie of evidence, must be proven and must be believable. Can we believe the defendant's alibi that he was at the Airline Bar at the time this allegedly took place, and that the money he had on him was to pay a bill to Audrey Williams for car repairs. Audrey Williams told you that the defendant owed him $42.90 for repairs that he had done on the defendant's car one week before. Of course, now, the defendant, as I appreciate it, has been trying to convey to you that the automobile stopped because it was popping. It wasn't running well. But Audrey Williams told you he completely timed this car, timing gear, points and plugs, the whole thing, and that the car was running well, and that when the defendant called him on a Saturday—the robbery takes place on a Sunday—he made no complaints about his car running bad. Contrary, the car was running good. The officers proved that when they cranked the car over at the station. What does the defendant tell Audrey Williams on Saturday? "I don't have the money to pay you now, but I'll have it Monday." I don't have it now, but I'll have it Monday. Up until that point in the case, there was no real motive for this robbery, but now the defendant, with one of his witnesses, injects a motive. He has got to have $42.90 by Monday. I don't have it on Saturday, but I'll have it on

Monday. When he's caught, he's got it. We know he doesn't have it Saturday, but when he's caught on Sunday night, he had it. Well, now what explanation does he have for that? He doesn't tell us where he gets the money with Willie Aaron—.[1]

(State Record, Vol. II, pp. 185–86).

■ Defendant contends that this comment drew the jury's attention to the fact that he did not testify and therefore infringed his fifth amendment right, *citing Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), and *United States v. Brown*, 546 F.2d 166 (5th Cir. 1977). Our inquiry is (1) whether "the prosecutor's manifest intention was to comment on the accused's failure to testify" or (2) whether the comment was " 'of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.' " *United States v. Chandler*, 586 F.2d 593, 603 (5th Cir. 1978), *cert. denied*, 440 U.S. 927, 99 S.Ct. 1262, 59 L.Ed.2d 483 (1979), *quoting United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977).

■ The court will not presume prosecutorial bad faith. "We cannot find that the prosecutor manifestly intended to comment on the defendant's failure to testify, if some other explanation for his remark is equally plausible." *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977). The comment must be examined in context to determine if reversible error has been committed. *United States v. Sorzano*, 602 F.2d 1201 (5th Cir. 1979).

■ An examination of the comment demonstrates that it was not the prosecutor's manifest intention to comment on Frank's failure to testify, nor would the jury's attention naturally and necessarily be drawn to Frank's silence. Frank did not testify at trial but presented an alibi defense consisting of two parts: (1) that he was at the Airline Bar the evening of the robbery, and (2) that he had sufficient funds to pay his auto mechanic for repairs and therefore did not need to rob the Kajun Kitchen to acquire sufficient funds. When viewed in this light, the prosecutor's comment is but a reference to the weakness of Frank's alibi. The prosecutor's argument is replete with references to "the defendant's defense" and "the defendant's alibi." Having relied on Willie Aaron's testimony, Frank cannot now complain when the prosecution highlights the gaps in that testimony. The prosecutor can respond to defendant's argument, *United States v. Corral-Martinez*, 592 F.2d 263, 268–69 (5th Cir. 1979), and ask the jury to draw the natural inferences flowing from defendant's conduct. *United States v. Ward*, 552 F.2d 1080, 1083 (5th Cir. 1977), *cert. denied*, 434 U.S. 850, 98 S.Ct. 161, 54 L.Ed.2d 119 (1977).

We believe the jurors would construe the argument about what defendant "doesn't tell us" to be response to the total case of the defense and the position taken by defendant's attorney rather than as an allusion to the personal silence of Jimmy Frank. It is not fatal under the test of *United States v. Rochan, supra.*

## THE SENTENCE

Frank contends that because he failed to plea bargain and elected to stand trial, his prison sentence on conviction was increased in violation of the Fourteenth Amendment. Once before the trial and once during a recess in the prosecution's case, the trial judge conducted a plea bargaining session in chambers in which the prosecutor and defense counsel participated. On both occasions the judge, in response to a request from defense counsel, *personally* stated that he would sentence appellant to a period of twenty years confinement in return for a plea of guilty. Frank rejected both offers, stood trial and was convicted by the jury, whereupon the judge imposed a sentence of thirty-three years in prison.

---

1. Willie Aaron, defendant's friend and witness at trial, testified that Frank exhibited a large wad of bills the morning of the robbery, implying that Frank did not need to rob the restaurant to obtain sufficient funds to pay the auto mechanic.

In response to Frank's assignments of error for appeal of the judgment of conviction and the sentence, the state trial judge, in his per curiam opinion, noted Frank's courtroom attitude, the seriousness of the crime of armed robbery, the risk of repetition, the threat to human life from Frank's conduct, and the legislative classification of armed robbery—a maximum sentence of ninety-nine years imprisonment without the benefit of probation, parole, or suspension of sentence, LSA–R.S. 14:64(B)—as factors bearing on his sentencing decision. None of these factors, however, demonstrate why Frank's sentence was increased beyond the twenty years proposed by the judge on the two previous occasions. "[A] court cannot sentence a defendant more severely *simply* because he exercised his right to stand trial." *United States v. Underwood*, 588 F.2d 1073, 1078 (5th Cir. 1979); *Baker v. United States*, 412 F.2d 1069, 1073 (5th Cir. 1969). "[T]he imposition of such a punishment, 'penalizing those who choose to exercise' constitutional rights '[is] patently unconstitutional.'" *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656, 668 (1969), *quoting United States v. Jackson*, 390 U.S. 570, 581, 88 S.Ct. 1209, 1216, 20 L.Ed.2d 138, 147 (1968).

■ A judge may consider a wide variety of factors, including a defendant's false testimony and his lack of remorse, in determining the proper sentence, *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Richardson*, 582 F.2d 968 (5th Cir. 1978), and we usually accept a judge's statement that he did not increase the sentence vindictively. *United States v. Rauhoff*, 525 F.2d 1170, 1178–79 (7th Cir. 1975); *see United States v. Noll*, 600 F.2d 1123, 1130 (5th Cir. 1979). The mere fact that Frank received a longer sentence upon conviction than was offered at a pretrial hearing does not conclusively show vindictiveness, *Cousin v. Blackburn*, 597 F.2d 511 (5th Cir. 1979), nor does the fact that a term less than the statutory maximum was imposed demonstrate its absence. *United States v. Wright*, 533 F.2d 214 (5th Cir. 1976).

■ The Supreme Court has stated that before a defendant who has successfully attacked his first conviction can be more severely sentenced after a new trial, the reasons for doing so must "affirmatively appear." *North Carolina v. Pearce*, 395 U.S. at 726, 89 S.Ct. at 2081. "Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding" in order to insure the absence of vindictiveness. *Id.* We see no reason why a similar rule should not apply to the plea bargaining process where the judge has personally stated what the sentence should be. A defendant may not be more severely sentenced after conviction by a judge, who earlier proposed a more lenient sentence in return for a plea of guilty to the same charge, absent reasons based upon conduct or nature of the defendant unknown to the judge when the lighter sentence was proposed.

This record demonstrates that the judge lacked reason to increase defendant's sentence over what he proposed in the plea bargaining sessions. At the preliminary examination held on February 21, 1975, before the same judge, the chief prosecution witness, Linda Young, testified, as did another eyewitness and one of the arresting officers. With regard to the conduct of the defendant during the course of the robbery and his subsequent arrest, their testimony at the preliminary hearing was virtually identical with their testimony at trial. Thus, prior to the start of the trial itself, the judge had a virtually complete picture of events on the night of the robbery. Furthermore, before trial at a pretrial conference, the judge, the assistant district attorney, and the defense counsel met in chambers. The prosecution "systematically presented the factual merits of this case against the defendant to the Judge, together with the pertinent criminal history of the defendant (rap sheet), and, after due consideration, the presiding Judge proposed to the defense attorney that a sentence of twenty years would be imposed in exchange for a plea of guilty. The defendant elected

to pretermit a guilty plea and exercised his right to the trial." (State Record, Vol. I, pp. 49–50, Stipulation).

The trial began on April 24, 1975, and the evidence was concluded on that day. "During the course of the trial, at a recess, the defense attorney, in the presence of the Assistant District Attorney, in Chambers, requested the presiding Judge to propose a prospective sentence in exchange for a guilty plea at that time. The presiding Judge again proposed a sentence of twenty years, and the defendant elected to continue his right to a trial." *Id.* There was a recess after the prosecution's first and chief witness, Linda Young, testified, and we assume that the second plea bargaining conference was held at that time. After Young testified, the prosecution presented the other witness to the crime, another waitress working in the restaurant. She was even less positive than Young in identifying Frank as the robber, and she failed to elicit any new facts in the conduct of the robbery. Both arresting officers then testified; neither of them gave any indication that Frank had resisted arrest or refused to cooperate with the authorities. The remainder of the prosecution witnesses were introduced in the attempt to discredit Frank's alibi that he was at the Airline Bar at the time of the robbery. Frank did not testify, so there was no false testimony or insolent demeanor to reflect against him. We can find nothing in the record following Young's testimony which would bear on the decision to increase the sentence—other than Frank's refusal to plead guilty.

The trial judge had heard a virtually complete statement of the prosecution's case on no less than three occasions, and he had twice proposed a sentence of twenty years. Nevertheless, on May 2, 1975, Frank was sentenced in open court to "thirty-three years at hard labor without benefit of parole, probation, or suspension of sentence." (State Record, Vol. I, p. 49, Stipulation). Under the unique facts of the present case, we must conclude that Jimmy Frank was penalized by the court because he exercised his constitutional right to stand trial. We hold that Jimmy Frank is now in custody under a sentence violative of the Constitution of the United States.

We presume that the Louisiana authorities will promptly see that Frank is resentenced to a term of no more than twenty years. Pending this action we remand the present cause to the district court for dismissal upon resentencing or for issuance of the writ.

REVERSED AND REMANDED.