**UNITED STATES of America**

v.

**Lonnie F. BENNEFIELD.**

**Cr. A. No. 90–10007–C.**

United States District Court, D. Massachusetts.

July 5, 1990.

Michael J. Pelgro, Boston, Mass., for U.S.

Robert Richman, Federal Defender, Boston, Mass., for defendant at the time of this motion.

## MEMORANDUM

CAFFREY, Senior District Judge.

This action is before the Court on defendant's motion to exclude evidence of an out-of-court, showup identification of the defendant and any in-court identification which may be made at trial. The defendant is charged in a one-count indictment as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). This charge arose out of an alleged armed robbery of a bookstore with a sawed-off shotgun by the defendant and two other men. Shortly after the robbery, the police arrested the defendant several blocks from the scene of the crime. The police transported the defendant back to the bookstore in handcuffs where he was shown to the victim and identified by the victim as the man who had held the shotgun during the robbery. The defendant now moves for the exclusion of any evidence of this showup identification, arguing that its admission would violate his rights to due process because the showup identification procedure was unnecessarily suggestive and created a serious likelihood of misidentification. The defendant further seeks to exclude any in-court identification which might be made at trial on the ground that such an identification would unavoidably be tainted by the prior unnecessarily suggestive showup identification. After careful consideration, this Court finds that the showup procedure used in this case was not unnecessarily suggestive. Thus, the admission of the out-of-court identification and any in-court identification will not deprive the defendant of a fair trial under the due process clause of the fourteenth amendment.

### I.

On May 13, 1989, Spenser's Mystery Bookshop on Newbury Street, Boston, Massachusetts was robbed by three men. Andrew Thurnauer, the owner and operator of Spenser's Mystery Bookshop, was working at the Bookshop on May 13, 1989 at approximately 7:00 p.m., closing time.[1] As Thurnauer was preparing to close, the shop was empty. While in the back of the store, Thurnauer noticed a man peer into the glass window of the store and then turn quickly and walk up the stairs. When Thurnauer approached the front of the store, two men walked into the store immediately after one another. The first man who walked into the store was dressed in white and was wearing a hat resembling a sailor's hat which was pulled down over his ears. The second man was holding a two-barrel shotgun, which appeared shorter than a normal shotgun.

The two men threatened Thurnauer and demanded money. Thurnauer put his arms in the air and told them where the money was. The men appeared dissatisfied with the amount of money they discovered. The man with the shotgun then escorted Thurnauer to the back of the store where he placed him in a stock room. The man with the shotgun threatened Thurnauer with his life and told him to remain in the stock room for ten minutes. Thurnauer remained in the stock room until the police came into the store and he told them he had been robbed.

On May 18, 1989 at approximately 7:10 p.m. Detective S. Blair and Detective F. Waggett were on duty in plain clothes in the vicinity of Newbury Street and Here-

---

1. The following facts regarding the robbery are derived from the testimony of the victim, Andrew Thurnauer, before the state grand jury.

ford Street.[2] While in this area, the detectives noticed a man walking back and forth in front of the Spenser Mystery Bookstore. A series of armed robberies had occurred in the area, and the detectives observed that the man in front of the bookstore fit the description of one of the wanted suspects in those robberies. A second man exited the store who fit the description of the second suspect in those armed robberies.

The two men quickly walked together toward a vehicle that was double parked on Newbury Street in front of the bookstore. As the detectives were approaching them, a third man exited the bookstore. The detectives observed that this third man was carrying a sawed off shotgun partially concealed under his jacket. Because of the heavy pedestrian and motor vehicle traffic in the area, the detectives did not attempt to apprehend the men at that location, but rather contained them as they entered the vehicle. The detectives then radioed for assistance. Detectives Blair and Waggett monitored the vehicle as it drove up Hereford Street and turned onto Commonwealth Avenue.

Police Officers Michael Donovan and Cliff Connolly positioned their marked police vehicle at the corner of Commonwealth Avenue and Dartmouth Street in order to intercept the suspect vehicle. After weaving through traffic, the suspect vehicle drove into the marked police car and suffered a flat tire. Two of the occupants of the suspect vehicle exited the car and began running on foot toward Clarendon Street. Officer Connolly, also on foot, pursued the two suspects. Officer Connolly chased one of the men down an alley and found him hiding beneath a parked vehicle. Officer Connolly arrested this man who was later identified as Lonnie Bennefield, the defendant herein. The other man who fled the vehicle was chased and apprehended by Officer Robert Butler. Officer Donovan apprehended the third man in the back seat of the suspect car.

The three men, including the defendant, were identified by Detectives Blair and Waggett as the men they had seen exit the bookstore. The three men were then transported back to Spenser's Mystery Bookshop where they were showed to the victim, Andrew Thurnauer, who identified the defendant as the man who carried the shotgun and locked him in the stock room at the rear of the store. In his testimony to the state grand jury, Mr. Thurnauer gave the following account of his out-of-court identification of the defendant:

Q: And a short time after that, were individuals brought back to the area of the store for the purpose of you attempting to make an identification of those individuals?

A: Yes, I stayed inside the store, right by the front door, which, as I said, is all glass and I can see straight through it. Three individuals were marched to the top of the stairs one by one and I was asked to identify them, if possible.

Q: As to the first individual, were you able to identify him?

A: I didn't know who the first person was. There was nothing about his appearance that was incompatible with the person I saw peering into the store, but I only got a small glimpse of that person.

Q: What about the second individual who was presented to you; did you recognize that individual?

A: The second person was the man who was dressed in white, and as I said, his clothing seemed quite distinctive to me. He was still wearing the hat with the brim pulled down and he wore glasses, I should add. And so he very strongly resembled the person who was in the store.

Q: And what about the third person who was presented to you; were you able to identify him?

**2.** The following facts regarding the surveillance and apprehension of the robbers are the facts as stated in the incident report completed by Detective Frederick Waggett of the Boston City Police Department who, in addition to being an arresting officer, also conducted interviews of the other Boston City police officers involved in this incident and the related arrests.

A: The third person who stood at the top of the stairs looked like the person who held the shotgun. The person holding the shotgun, I believe, was wearing a hat. The person at the top of the stairs was not wearing a hat, but in all other respects, he resembled the person inside the store.

On January 8, 1990, a federal grand jury charged the defendant in a one-count indictment with knowingly possessing, in and affecting commerce, a firearm, to wit: a Remington, 20–gauge Wingmaster Shotgun, having previously been convicted of a felony. See 18 U.S.C. § 922(g)(1). Trial of the defendant on this indictment is scheduled to commence on July 9, 1990. Prior to trial, the defendant now seeks to exclude Thurnauer's initial, out-of-court identification of him on the ground that it was obtained by means of an unnecessarily suggestive showup identification procedure which created a likelihood of misidentification. Further, the defendant contends that any in-court identification of the defendant will necessarily be tainted by the prior identification and thus should also be excluded as the product of an unnecessarily suggestive identification procedure. For the following reasons, the defendant's motion to exclude identifications is denied.

## II.

■ Due process of law, which requires fundamental fairness, protects against the admission of evidence deriving from identification procedures which are "unnecessarily suggestive and conducive to irreparable mistaken identification." *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Delineating the scope of this due process protection, the Supreme Court has applied a two-part analysis to determine when the admission of a certain identification procedure would deprive a defendant of due process of law. *See Manson v. Brathwaite*, 432 U.S. 98, 109–117, 97 S.Ct. 2243, 2250–2254, 53 L.Ed.2d 140 (1977); *Neil v. Biggers*, 409 U.S. 188, 196–201, 93 S.Ct. 375, 380–383, 34 L.Ed.2d 401 (1972). *See also United States v. Bouthot*, 878 F.2d 1506, 1514 (1st Cir.1989); *Judd v. Vose*, 813 F.2d 494, 498

(1st Cir.1987); *Perron v. Perrin*, 742 F.2d 669, 675 (1st Cir.1984). When applying this analysis, a court must focus on the totality of the circumstances. *Stovall*, 388 U.S. at 302, 87 S.Ct. at 1972; *Manson*, 432 U.S. at 113, 97 S.Ct. at 2252; *Biggers*, 409 U.S. at 199, 93 S.Ct. at 2252. The first part of the test involves a determination of whether the identification procedure utilized was unnecessarily suggestive. *Bouthot*, 878 F.2d at 1514; *Velez v. Schmer*, 724 F.2d 249, 251 (1st Cir.1984). *See Stovall*, 388 U.S. at 302, 87 S.Ct. at 1972; *Manson*, 432 U.S. at 109, 97 S.Ct. at 2250. If a court concludes that the procedure was not unnecessarily suggestive, the court need not inquire further, and evidence as to the identification may be admitted without violating due process. *E.g.*, *Stovall*, 388 U.S. at 302, 87 S.Ct. at 1972; *Perron*, 742 F.2d at 675.

■ If a court determines that the procedure was impermissibly suggestive, however, the court must scrutinize the identification further. *See Manson*, 432 U.S. at 109, 113–117, 97 S.Ct. at 2250, 2252–2254; *Velez*, 724 F.2d at 251. The fact that an identification is the product of an unnecessarily suggestive procedure does not automatically require exclusion of the identification. Rather, "[t]he admission of testimony concerning a suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability." *Manson*, 432 U.S. at 106, 97 S.Ct. at 2249. Thus, under the second part of the analysis, a court must look at the totality of the circumstances and determine whether the identification was reliable despite the unnecessarily suggestive confrontation procedure. *See Biggers*, 409 U.S. at 188, 93 S.Ct. at 375; *Manson*, 432 U.S. at 113–14, 97 S.Ct. at 2252–53; *Velez*, 724 F.2d at 251; *see also Perron*, 742 F.2d at 675. "The factors to be considered in evaluating the likelihood of misidentification" because of the impermissibly suggestive identification procedure "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior descrip-

tion, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers,* 409 U.S. at 188, 93 S.Ct. at 375. *See Manson,* 432 U.S. at 114, 97 S.Ct. at 2253. If a court concludes that an identification is reliable even though obtained by a suggestive procedure, the admission of evidence concerning the identification will not violate due process. *Manson,* 432 U.S. at 110, 97 S.Ct. at 2250.

▇▇▇ Although "[t]he practice of showing suspects singly to persons for the purpose of identification ... has been widely condemned," the admission of evidence of an identification obtained by means of a showup, without more, does not violate due process. *Stovall,* 388 U.S. at 302, 87 S.Ct. at 1972; *Biggers,* 409 U.S. at 198, 93 S.Ct. at 381. As the Supreme Court in *Stovall* made clear, even though a showup procedure is naturally suggestive, it is not always "unnecessarily suggestive." 388 U.S. at 302, 87 S.Ct. at 1972. In *Stovall,* the police showed the defendant to the victim in her hospital room, and the court held that the immediate hospital confrontation was imperative and necessary and did not violate due process. *Id.*

Following *Stovall,* several courts of appeals have similarly found showup identification procedures conducted at the crime scene immediately following the crime not to be unnecessarily suggestive. *See Johnson v. Dugger,* 817 F.2d 726, 729 (11th Cir.1987) (showup in police car immediately following the robbery not impermissibly suggestive where the police did not aggravate the suggestiveness); *United States v. Bagley,* 772 F.2d 482, 492–93 (9th Cir.1985) (showup at the crime scene one and one half hours after the robbery was a legitimate identification procedure and not unnecessarily suggestive); *United States v. Kessler,* 692 F.2d 584, 585–87 (9th Cir.1982) (showup at crime scene approximately one hour after the crime not unnecessarily suggestive); *United States v. Williams,* 626 F.2d 697, 703 (9th Cir.1983) (showup at crime scene fifteen minutes after robbery is a permissible means of identification);

*Frank v. Blackburn,* 605 F.2d 910, 912–13 (5th Cir.1979) (showup at the crime scene immediately following defendant's arrest not unnecessarily suggestive). "[A]n immediate confrontation not only prevents the suspect from substantially altering his appearance and allows the witness to test [his or] her recollection while [his or] her memory is still fresh, but permits 'expeditious release of innocent subjects.'" *Frank,* 605 F.2d at 912 (quoting *United States v. Wilson,* 435 F.2d 403, 405 (D.C. Cir.1970)). *See also Johnson,* 817 F.2d at 729. "Additionally, where the innocent may have been mistakenly apprehended, prompt identification allows the police to realize their error and to continue their search while the criminal is still within easy reach." *Id.* (quoting *Allen v. Estelle,* 568 F.2d 1108, 1112–13 (5th Cir.1978)).

In the one case in which the First Circuit Court of Appeals addressed this issue, however, the court held that a showup identification procedure where the defendant was shown to the witnesses at 3:00 a.m., ten hours after the crime, with the introduction "This is him, isn't it?" was unnecessarily suggestive. *Velez v. Schmer,* 724 F.2d 249, 251 (1st Cir.1984). In so holding the *Velez* Court emphasized that the introduction, "This is him, isn't it?," was "particularly suggestive, as well as totally unnecessary," and that there would have been only "a short wait for a later morning line-up." *Id.* Moreover, in *Velez,* the showup procedure was not conducted at the crime scene immediately after the crime, but was held at the police station ten hours after the crime was committed. *Id.* at 250–51. Thus, there was no necessity to use a showup instead of a line-up. *See id.* at 251.

### III.

▇▇▇ Guided by the analysis enunciated by the Supreme Court and the decisions of the courts of appeals for the first circuit and other circuits, this Court now turns to consider the showup identification procedure employed in the instant case. First, this Court must determine whether the showup procedure used by the police when they brought the defendant back to the

bookshop and showed him the victim was unnecessarily suggestive. In this case, the defendant was apprehended immediately following the robbery after Officer Connolly pursued him on foot and found him beneath a parked car. The defendant was then transported back to the crime scene and showed to the victim singly at the top of the stairs outside the bookshop. The two other men apprehended were also showed to the victim in this manner. Although the defendant was handcuffed, the police made no suggestive comments, but simply asked the victim to identify the men if he could. The victim did not positively identify the first man, but did identify the second man and the defendant, the third man presented.

Looking at the totality of the circumstances, this Court finds that the showup identification procedure used in this case was not unnecessarily suggestive. Unlike the situation in *Velez,* and similar to the situations in *Johnson, Bagley,* and *Frank,* this confrontation occurred immediately following the robbery. *See Velez,* 724 F.2d at 250–51; *Johnson,* 817 F.2d at 728–29; *Bagley,* 772 F.2d at 492; *Frank,* 605 F.2d at 912. Persuaded by those decisions, particularly by the reasoning of the Court of Appeals for the Fifth Circuit in *Frank,* this Court finds that showups, although unavoidably suggestive, are also useful and necessary when they are employed at the crime scene immediately following a crime. *See Frank,* 605 F.2d at 912; *Johnson,* 817 F.2d at 729.

■ Moreover, this showup is also distinguishable from the showup in *Velez* because in this case the police said nothing and did nothing to increase the suggestiveness of the procedure and the chances of misidentification. The fact that the defendant was handcuffed during the showup does not of itself make the procedure impermissibly suggestive. *See Stovall,* 388 U.S. at 301–02, 87 S.Ct. at 1972–73. Also, as the victim's response to the first man presented by means of this showup indicates, the procedure did not predispose the victim to misidentification. For these reasons, this Court concludes that the showup

procedure used by the police at the bookshop was not unnecessarily suggestive or conducive to misidentification. Having concluded that the confrontation was not unnecessarily suggestive, this Court need not apply the second part of the analysis focusing on reliability which the Supreme Court outlined in *Manson* and *Biggers.*

■ Accordingly, because the showup was not unnecessarily suggestive, evidence of the out-of-court identification of the defendant should be admissible and any in-court identification should not be excluded. Thus, the defendant's motion to exclude should be denied.

In conclusion, this Court recognizes that the defendant requested an evidentiary hearing on this motion to exclude. In the opinion of this Court, however, an evidentiary hearing to explore the suggestiveness of the identification procedure was not necessary or required because the defendant did not make sufficient factual allegations raising any issues of fact related to the suggestiveness of the identification procedure or the reliability of the identification. *See Cohen v. United States,* 378 F.2d 751, 760–61 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967); *see also Watkins v. Sowders,* 449 U.S. 341, 345–49, 101 S.Ct. 654, 657–59, 66 L.Ed.2d 549 (1981); *United States v. Archibald,* 734 F.2d 938, 940–41 (2d Cir.1984).

Order accordingly.

## ORDER

In accordance with the memorandum filed this date, it is ORDERED:

Defendant's motion to exclude identifications is denied.