Calvin **WILLIAMS**, Petitioner-Appellant,

v.

Ross **MAGGIO, Jr., Warden, Louisiana State Penitentiary, and the Attorney General of the State of Louisiana, Respondents-Appellees.**

No. 82–3271
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 10, 1983.
Certiorari Denied May 2, 1983.
See 103 S.Ct. 1901.

Lee R. Leonard, Federal Public Defender, New Orleans, La., for petitioner-appellant.

John H. Craft, Asst. Dist. Atty., New Orleans, La., for respondents-appellees.

Before BROWN, REAVLEY and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

## I. INTRODUCTION

In this habeas corpus appeal Calvin Williams attacks his state court criminal conviction on the basis of insufficiency of evidence to prove guilt beyond a reasonable doubt and ineffective assistance of counsel, in violation of his fourteenth and sixth amendment rights, respectively.

On June 23, 1977, appellant Calvin Williams was convicted of first-degree murder as a principal after a jury trial in the Criminal District Court for the Parish of Orleans. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. After exhausting his state remedies, Williams filed a pro se ap-

plication for habeas corpus relief under 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Louisiana. The federal public defender represented Williams at the evidentiary hearing before the magistrate who recommended that the application be dismissed. The district court agreed and entered an order of dismissal. After a review of the record of both the state trial and the habeas evidentiary hearing, we affirm the district court's dismissal of the petition.

## II. FACTS

Testimony and exhibits introduced during trial presented the jury with the following evidence. On the evening of December 28, 1976, the appellant Calvin Williams and his brother Carl were at a local neighborhood lounge, Vernell's Bar, located near the St. Bernard Housing Project in New Orleans. Four friends, Keith Norse, Thaddeus Griffin, Norbert Matthews, and Fred Gibson, were also at the bar about 11:00 p.m. that evening. The four men left the lounge at approximately 11:30. After walking a short distance, Matthews left Norse, Gibson and Griffin to return to his home. As the three men continued, they were approached by the defendant and his brother Carl Williams. Carl Williams ordered Norse at gunpoint to stop and then fired a shot at him. Gibson and Griffin immediately fled from the scene, but Griffin, after running some distance, turned and observed Carl Williams holding Norse. Two or three additional shots were fired. Griffin continued to run but turned a second time to observe what was transpiring. As he did so, the appellant Calvin Williams fired at him. In the meantime, Gibson had caught up with Matthews and told him that Calvin and his brother Carl had shot Norse. They returned to the scene of the crime where they discovered Carl Williams standing over the victim's body with Calvin Williams several yards behind. They testified that Calvin was wearing a green army fatigue, a dark knit hat, and green "shades," the same outfit he had been wearing when they saw him earlier at Vernell's. On seeing Matthews and Gibson approach, Calvin and his brother

fled down the street. Keith Norse had been shot three times in the head and once in the left hand. Death was caused by a bullet passing through his brain. The record reflects no motive for the murder.

The police arrived at the scene at 11:55 and began an investigation. They executed a search warrant ten days later at the home of Calvin's mother, Mrs. Leana Williams. There they found a green army jacket and a .38-caliber pistol. Calvin was arrested later that day and indicted along with his brother for the first-degree murder of Keith Norse. Carl Williams was never apprehended.

Calvin Williams, represented by retained counsel, was tried before a jury and found guilty of first-degree murder as a principal. He was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. After exhausting his state remedies, Williams filed a pro se petition for habeas corpus in federal district court. The U.S. Magistrate, after an evidentiary hearing, recommended dismissal of the petition. The district judge accepted the recommendation, and Williams filed a timely appeal.

## III. ISSUES

On appeal Williams contends that the evidence presented at trial was insufficient to support a finding of guilt beyond a reasonable doubt in violation of the fourteenth amendment right of due process and that he was denied effective assistance of counsel in violation of the sixth amendment.

### A. Sufficiency of the Evidence

■ The test for determining the sufficiency of the evidence when a state prisoner challenges a state criminal conviction under 28 U.S.C. § 2254 was announced in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That test requires that habeas corpus relief be granted if, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. 443 U.S. at 319, 324, 99 S.Ct. at 2789, 2791–92.

■ Applying the *Jackson* standard to the facts of this case, it is apparent that the appellant is not entitled to relief on evidentiary grounds. Williams was prosecuted for being a principal in the murder of Keith Norse. A principal is defined under Louisiana law as

all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission or directly or indirectly counsel or procure another to commit the crime....

La.Rev.Stat.Ann. § 14:24 (West 1974).

■ Under Louisiana law one may be convicted as a principal for the crime if he has the requisite mental state. *State v. Holmes,* 388 So.2d 722, 726 (La.1980). The mental state required for first-degree murder is specific intent to kill or to actively desire the death of, or great bodily harm to, the victim. *Holmes,* 388 So.2d at 726–27. The specific intent to kill may be inferred from the accused's entire conduct. *State v. Butler,* 322 So.2d 189, 194 (La.1975). Such intent might reasonably be implied from the intentional use of a deadly weapon to produce injuries involving serious risks of death. *Id.*

The testimony at trial has been set forth earlier in this opinion. This testimony showed that the appellant was with his brother; he approached the victim along with his brother who held the victim at gunpoint; he stood by while the victim was shot three times in the head by his brother; he shot at an eyewitness to the crime; and he then fled the scene with his murdering brother.

The appellant chose not to take the stand to rebut this testimony. His defense, however, was that he was not there. Albertha Scott Kennedy, who claimed to be an eyewitness to the murder, testified that she saw the appellant's brother shoot Keith Norse. Mrs. Scott stated that the appellant was not present during the crime. The jury, however, chose not to believe Mrs. Scott.

In the light of the record as a whole, there was clearly sufficient evidence upon which a rational jury could return a verdict of guilt beyond a reasonable doubt. There were three eyewitnesses who described the murder and the appellant's role in the crime. From this testimony the jury was fully justified in inferring intent sufficient to find the appellant guilty beyond a reasonable doubt as a principal in the murder. The appellant thus fails to state grounds for relief based upon *Jackson.*

B. Ineffective Assistance of Counsel

■ Williams next contends that the representation afforded him by his retained attorney did not meet the constitutional minimum for effective assistance of counsel. He specifically alleges that his attorney failed to request a mistrial because of alleged prosecutorial misconduct and to call an alleged alibi witness, the grandmother of his common-law wife.

An evidentiary hearing was held before a United States Magistrate for the specific purpose of taking testimony as to the effectiveness of appellant's trial counsel. At that hearing, the appellant, his mother and appellant's trial counsel testified.

The testimony adduced at that hearing revealed that Williams and his attorney met and discussed the facts of the case on several occasions. The attorney conferred as well with the appellant's common-law wife and established an alibi defense based upon her testimony. The attorney wanted the appellant's common-law wife's grandmother to testify to bolster the defense. She was unavailable to testify due to ill health. Finally, the attorney called to the stand an eyewitness to the shooting who testified that the appellant was not there and did not take any part in the crime.

Also presented was testimony as to purported errors and omissions on the part of the attorney. Williams testified that his attorney failed to interview or subpoena the appellant's mother who could have testified that she telephoned the appellant the night of the shooting and spoke to him at such a time as to verify his alibi. His mother testified similarly. The appellant and his

mother also testified that the attorney did nothing to verify and take advantage of the fact that a jacket seized from the mother's home and identified as having been worn by the appellant at the shooting actually belonged to Kenny Huderson, and not to the appellant. Finally the appellant testified that the attorney suggested that his brother, also wanted for the crime, not turn himself in to the police.

There was, however, further testimony in contradiction of those claims. Williams' mother testified that she never attempted to contact the attorney nor did she bother to attend her son's trial and offer her testimony even though she was aware of the date and time of the trial. The attorney testified that no one ever told him about Kenny Huderson and that he understood that the jacket belonged to another brother of the appellant. The attorney also testified that he never suggested that the wanted brother not turn himself in and that he was aware that the wanted brother could have exculpated Williams.

As for the specific allegations, Williams' trial counsel favorably testified for the petitioner at his habeas hearing that he should have called the grandmother of the appellant's common-law wife. She allegedly would have corroborated her granddaughter's story that the appellant, his wife and their baby left the grandmother's apartment at 10:15 p.m. on the night of the murder. Norse's murder occurred around 11:30 p.m. His trial counsel further testified that he should have requested a mistrial following the prosecutor's alleged gross misconduct in cross-examining "eyewitness" Albertha Scott Kennedy. This misconduct consisted of the prosecutor's asking if she were not a paid police informant, if a Major Norris of the police department had not gotten her a job at Charity Hospital, and how much she was paid to testify at trial.

 Notwithstanding counsel's 20/20 hindsight, the sixth amendment guarantee of effective assistance of counsel does not entitle the accused to error-free representation. Rather, a criminal defendant is enti-

tled to counsel "reasonably likely to render and rendering reasonably effective assistance." *Beavers v. Balkcom,* 636 F.2d 114, 115 (5th Cir.1981). Counsel's effectiveness is judged in light of the entire record and the totality of the circumstances. *Id.* A reviewing court must thus consider all of the circumstances of the case, but only as those circumstances were known to the attorney at the time in question. *Washington v. Watkins,* 655 F.2d 1346, 1356 (5th Cir. 1981). Moreover "counsel's effectiveness may not be assessed through the finely ground lenses of 20/20 hindsight...." *Id.*

A review of the record reveals that most certainly "counsel's performance did not reach that high degree of ineptitude which would render [the] trial as a whole 'fundamentally unfair.'" *Nelson v. Estelle,* 642 F.2d 903, 908 (5th Cir.1981). The failure to call the grandmother was immaterial, for she could have testified only that the appellant left her home, located very near the bar, approximately one hour before the murder occurred. There was no evidence adduced at the evidentiary hearing to contradict the trial counsel's recollection that the grandmother was, in fact, unable to testify at trial. Moreover, counsel's failure to move for a mistrial did not, when considered in light of the entire record and totality of circumstances, render his assistance constitutionally ineffective. *Washington,* 655 F.2d at 1357.

The record reflects an assiduous, competent and reasonably effective defense. Counsel vigorously cross-examined the victim's three friends, who testified that the appellant was at the scene of the crime, in an attempt to discredit their identification of the appellant. He called three defense witnesses: Mrs. Kennedy, the alleged eyewitness; the appellant's wife who was an alibi witness; and Robert Bell, who testified that he was at the bar on the night of the murder and that the appellant left the bar at approximately 9:30 p.m. and did not return. Moreover, counsel did object repeatedly to the prosecutor's questions even though his objections were overruled. The appellant's counsel filed a motion for new

trial on newly discovered evidence which was denied. The record thus reflects that the appellant in fact received the effective assistance of counsel.

For the foregoing reasons, the district court's dismissal of appellant's petition for habeas corpus is

AFFIRMED.