Lawrence John STOKES, Petitioner-Appellant,

v.

Raymond K. PROCUNIER, Director, Texas Department of Corrections, Respondent-Appellee.

No. 83–2481.

United States Court of Appeals, Fifth Circuit.

Oct. 22, 1984.

2. *Id.,* 91 F.2d at 297.

Jerry Warren, Rain, Harrell, Emery, Young & Doke, Dallas, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Charles A. Palmer, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, REAVLEY, and TATE, Circuit Judges.

REAVLEY, Circuit Judge:

Lawrence John Stokes, who is on parole under the custody of the State of Texas, appeals the denial of habeas corpus relief under 28 U.S.C. § 2254. *See Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963). He was convicted of attempted burglary in 1973 and, because of two prior convictions, received an enhanced sentence of life imprisonment. After Stokes unsuccessfully challenged his conviction in state court, he filed this action in federal district court. The district court referred two claims—improper comment on Stokes' post-arrest silence and ineffectiveness of counsel—to a magistrate for a hearing. After adopting his findings and conclusions, the court dismissed the cause

with prejudice, but issued a certificate of probable cause. We affirm in part and reverse in part.

## I. Case History

Sheila Shumaker returned to her home in Beaumont, Texas, on the afternoon of January 6, 1973, and observed a man wearing white gloves, trying to open the patio door from the outside with what she thought was a screwdriver. She asked him what he was doing, and he ran off. Then she called the police, providing a description of the man. A neighbor of the Shumakers saw a man running on a service road behind his house.

After receiving a radio call about the incident, a police officer saw a man matching the description in the area, about seven blocks from the Shumaker residence. When asked what he was doing, the man first said that he was visiting friends, although he could not name them. He then said he was looking for a lost dog, but, when asked, could not say where he lost the dog or identify any street names in the neighborhood. The police officer then arrested Stokes, finding a pair of white gloves and a screwdriver in a pocket of his sport coat. The police officer drove to the Shumaker residence, and Sheila viewed Stokes sitting in the police car. Although she thought the man outside the house had lighter hair than the man in the car, she observed that the man in the car wore a similar jacket, was of the same race and age, and generally resembled the man she had seen earlier. The neighbor identified the man in the police car as the same man he saw running earlier.

The jury found Stokes guilty of attempted burglary with intent to commit theft. Then, in the punishment phase of trial, the prosecution introduced "pen packets" and fingerprint evidence establishing that Stokes had previously been convicted of two felonies. The jury found that the prosecution had proved beyond a reasonable doubt, as charged in the indictment, that Stokes had previously been convicted of two felonies less than capital. According-

ly, the court sentenced Stokes to life imprisonment as a habitual offender under Tex.Penal Code Ann. Article 63 (Vernon 1925) (repealed 1974) (current version at Tex.Penal Code Ann. § 12.42(d) (Vernon 1974 & Supp.1984) ).

## II. Receipt of Indictment

Stokes first challenges his 1973 conviction on the basis that he did not receive a copy of the indictment. He argues that the failure to provide an accused with a copy of the indictment violates Texas law, *see* Tex. Crim.Proc.Code Ann. art. 25.01 (Vernon 1966), and the Sixth Amendment. Our inquiry, however, is limited to ascertaining whether Stokes was deprived of any right guaranteed by the United States Constitution. He would be entitled to relief if he had not been informed of the nature and cause of the accusation against him or if he was unable to plead the judgment as res judicata against any attempted prosecution for the same offense. *See, e.g., Calley v. Callaway*, 519 F.2d 184, 226 (5th Cir.1975) (en banc), *cert.denied*, 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 760 (1976); *United States v. Strauss*, 283 F.2d 155, 158–59 (5th Cir.1960).

■ The record contains a Precept to Serve Copy of Indictment, which shows that Stokes was served with a certified copy of the indictment on April 19, 1973, well before he was tried in August 1973. Moreover, the hearing before the magistrate revealed that Stokes' trial counsel's file contained a copy of the indictment. Although counsel could not specifically remember whether he obtained a copy of the indictment before trial, his normal procedure was to do so immediately after being appointed. He also testified that he discussed the charges in detail with Stokes. Stokes' Sixth Amendment right to be informed of the charges so that he could prepare a defense was not violated.

## III. Evidence of Intent to Commit Theft

■ Stokes argues that insufficient evidence existed upon which a rational trier of fact could conclude beyond a reasonable

doubt that he possessed the intent to commit theft, an essential element of the crime for which he was convicted. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Greer v. State,* 437 S.W.2d 558 (Tex.Crim.App.1969). We disagree. A rational trier of fact could have found, by inference from the circumstantial evidence introduced, that Stokes had the requisite intent. *See, e.g., Williams v. Maggio,* 695 F.2d 119, 122 (5th Cir.), *cert. denied,* 461 U.S. 917, 103 S.Ct. 1901, 77 L.Ed.2d 288 (1983); *United States v. Haldeman,* 559 F.2d 31, 115–16 (D.C.Cir. 1976) (en banc), *cert.denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977); *Hall v. United States,* 286 F.2d 676, 677, 679 (5th Cir.1960); *Williams v. State,* 537 S.W.2d 936, 938 (Tex.Crim.App.1976); *Warren v. State,* 641 S.W.2d 579, 582 (Tex.App. —Dallas 1982, pet. dism'd).

Sheila Shumaker testified that she observed a man wearing white gloves using a screwdriver to "jimmy open" the patio door at the rear of her house. He fled when she inquired what he was doing. A neighbor who saw a man running away testified, "His hands seemed to be white as if he had something on his hands." The police officer arrested a man fitting the description given over the radio and supplied by Sheila. He possessed a screwdriver and lightweight white gloves and gave two explanations for his presence in the neighborhood, which he later admitted were false. The neighbor identified him as the same man he had seen running. Based on this evidence, the jury could have concluded beyond a reasonable doubt that Stokes used the screwdriver with intent to steal something from the Shumaker house and that he wore the white gloves to avoid leaving fingerprints.

## IV. Prosecutorial Comments on Stokes' Post-Arrest Silence

On direct examination at the trial the police officer related the circumstances surrounding Stokes' arrest. He stated that he made the arrest after Stokes told him that he in fact had not lost a dog and could not produce identification. The following colloquy between the prosecutor and police officer ensued:

Q. Officer Gratzer, at the time that you took him into custody did you advise him of the reason that you were placing him in custody and also advised him of the rights that are required under the law?

A. Yes, sir, I did.

Q. And after advising him of the reason you were arresting him did he tell you anything else?

A. No, he did not.

Defense counsel made no objection to the latter question. On cross examination, Stokes' attorney asked:

Q. Officer, have you ever talked to anyone when you were investigating an offense or an alleged offense and ordinary people—do they ever appear nervous in your presence?

A. Yes, they do.

Q. So, it isn't unusual for someone to be hesitant in talking or not clear about what they have to say, is it? We are not talking about this individual in this case, but in performing routine investigations it is not unusual, is it, officer, to talk with someone who is hesitant or is confused about details?

A. No, sir.

On redirect, the prosecutor inquired:

Q. Did [Stokes] subsequently tell you, in fact, that there was no dog lost and that wasn't why he was there?

A. Yes, sir.

Q. Now, what is of great importance, I think, in line with what Mr. Boudreaux asked you, his contention that people are nervous, after you told the defendant that you were placing him in your custody for attempted burglary of a house down the street from that point on, or at that very moment, from that point on he never said a word?

A. He wouldn't answer any more questions.

Again, defense counsel failed to object. Boudreaux then examined Gratzer on re-cross:

Q. Officer, is it—would it be unusual if you tell someone you are arresting them for some crime for them not to make any further statement?

A. Yes, sir.

Q. That's not unusual, is it?

A. It is unusual.

Q. It is unusual?

A. Yes, sir.

Q. Are you telling me and this jury that in the course of your duties when you arrest someone, at that point they make no further statements?

A. Normally they do make further statements.

Q. You've never known anyone to become afraid and keep their mouth shut, officer, and not say anything further?

A. Yes, it has happened.

Q. But this is not unusual?

A. No.

Q. Officer, would you expect that whenever you walk up to someone on the street in conducting an investigation would you feel that they have a duty to talk to you?

MR. GIST: Your Honor, I object to that. That's improper.

THE COURT: Sustained.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Court stated that "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation." *Id.* at 468 n. 37, 86 S.Ct. at 1625 n. 371; *see United States*

*v. Hale,* 422 U.S. 171, 182–83, 95 S.Ct. 2133, 2139–40, 45 L.Ed.2d 99 (1975) (Douglas, J., and White, J., concurring). In *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Court extended this principle of *Miranda* to the cross examination context, holding that a defendant's post-arrest silence could not be used to impeach his exculpatory story without violating due process.

Although Stokes raised the issue of improper prosecutorial comment on direct appeal, the Court of Criminal Appeals did not discuss it in the opinion affirming his conviction. The Texas courts denied Stokes' petition for habeas relief without opinion.

The district court referred the issue of improper comment on Stokes' post-arrest silence to the magistrate for a hearing and findings. The magistrate made alternative findings, which the district court adopted. First, because of defense counsel's failure to object, review of the claim was barred by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Second, the violation was harmless beyond a reasonable doubt. *See, e.g., United States v. Shaw,* 701 F.2d 367 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1984); *Chapman v. United States,* 547 F.2d 1240 (5th Cir.), *cert. denied,* 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977).

If defense counsel had not explored with the arresting officer possible reasons for Stokes' post-arrest silence, we do not doubt that the prosecutor would not have emphasized the silence as extensively as he did on redirect and during final arguments.[1]

---

1. [T]he officer said, "Mr. Stokes, I'm arresting you for the attempted house burglary that occurred right down the street." And you know what he said then? Nothing. No more stories. No nothing. Nothing. And never said another word, and that ought to indicate to you and confirm what I suggested to you all along, is that a professional burglar knows when he's in the box, and from that point on the professional did just what—

MR. BOUDREAUX: Your Honor, we're going to object to that. Counsel needs to stay within the Record.

THE COURT: Overruled.

MR. BOUDREAUX: Note our exception.

BY MR. GIST:

He was caught, and he did just what everybody does that is in the business—bite your lip and just keep your mouth shut. Do what the lawyers tell you to do. Don't tell those policemen nothing once they got you. Don't say a word.

He could have said, were it so, "I was here visiting a lady friend." He could have said, "My car broke down." He could have said, "I'm a doctor." "I'm a bus driver looking for my bus." He could have said anything. He could have said, "I don't know what you are

Nevertheless, the prosecutor in his case-in-chief initiated the comment on Stokes' silence by asking if he had said anything else after he was arrested and advised of his rights. "In numerous cases this Court has held that mention of the fact of the defendant's silence following arrest by the prosecutor in his case-in-chief is a violation of constitutional dimension." *Shaw*, 701 F.2d at 381.

Because the state court did not specify whether it denied habeas relief on the merits or due to procedural default, we must interpret the state court's silence. *See O'Bryan v. Estelle*, 714 F.2d 365, 383–85 (5th Cir.1983); *Preston v. Maggio*, 705 F.2d 113 (5th Cir.1983). We must consider

> [w]hether the court has used procedural default in similar cases to preclude review of the claim's merits, whether the history of the case would suggest that the state court was aware of the procedural default, and whether the state court's opinions suggest reliance upon procedural grounds or a determination of the merits.

*O'Bryan*, 714 F.2d at 384 (quoting *Preston* ).

■ Our investigation into Texas cases reveals that Texas courts have consistently refused to consider the merits of claims similar to this in cases where counsel failed to object and where counsel failed to object properly. Texas courts have not reached the merits of *Miranda* violations because of the failure of counsel to object contemporaneously. *See, e.g., Moulden v. State*, 576 S.W.2d 817 (Tex.Crim.App.1978); *Shumake v. State*, 502 S.W.2d 758 (Tex.Crim.App.1973); *Larocca v. State*, 479 S.W.2d 669 (Tex.Crim.App.1972); *Clark v. State*, 470 S.W.2d 869 (Tex.Crim.App.1971). Texas courts have also construed the failure to object as waiver of a *Doyle* claim, *Greene v. State*, 651 S.W.2d 948, 951–52 (Tex.App.—Dallas 1983, pet. granted) (en banc), and have held that the contemporaneous objection requirement applicable to a *Miranda* claim also applies to an allegation of a *Doyle* violation, *Wilkins v. State*, 635

S.W.2d 444, 448–49 (Tex.App.—San Antonio 1982). Even before *Doyle*, the Court of Criminal Appeals had read *Miranda* to prohibit prosecutorial comment about the silence of an accused during arrest. *See Hawk v. State*, 482 S.W.2d 183, 184 (Tex.Crim.App.1972). Moreover, well before *Miranda* Texas law did not permit the use of a defendant's silence at the time of his arrest as a circumstance indicating guilt. *See, e.g., Hicks v. State*, 493 S.W.2d 833, 836–37 (Tex.Crim.App.1973); *Redding v. State*, 149 Tex.Cr.R. 576, 197 S.W.2d 357 (1946); *Taylor v. State*, 118 Tex.Crim. 340, 42 S.W.2d 426 (1931). At the time of Stokes' trial, the grounds for objection to prosecutorial comment on the post-arrest silence of a defendant were apparent. Thus, this case does not present an exception to the rule that failure to object constitutes waiver. *See O'Bryan*, 714 F.2d at 385 n. 15; *Green v. Estelle*, 706 F.2d 148 (5th Cir.); *Bass v. Estelle*, 705 F.2d 121 (5th Cir.1983) (opinion denying petition for rehearing); *Parker v. State*, 649 S.W.2d 46, 53–55 (Tex.Crim.App.1983) (en banc); *Cuevas v. State*, 641 S.W.2d 558, 563 (Tex.Crim.App.1982).

We note that the State's supplemental brief on direct appeal argued that the issue of comment on Stokes' post-arrest silence was not preserved for review. Accordingly, we conclude that the state court was aware of the procedural default.

Stokes has argued only ineffective assistance of counsel as "cause" to excuse the failure to object. This is insufficient to satisfy *Sykes'* "cause" prong. *See, e.g., Weaver v. McKaskle*, 733 F.2d 1103, 1106 (5th Cir.1984); *Washington v. Estelle*, 648 F.2d 276, 278 (5th Cir.), *cert. denied*, 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981). Because we hold that Stokes' procedural default prevents our hearing his claim on the merits, we need not address whether the improper comment on his post-arrest silence constitutes harmless error.

## V. One-Man Showup

Stokes contends that he did not receive a fair trial because of a pretrial identification

talking about." He said nothing. Never a word.

procedure that was unnecessarily suggestive and conducive to misidentification. *See, e.g., Stovall v. Denno,* 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). The two witnesses did not identify Stokes at trial, but testified that the man in the police car was or closely resembled the man with white gloves or hands who fled after being seen at the rear entrance to the Shumaker house. Stokes concedes that his counsel did not object to the identification testimony. The district court held that procedural default under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 549 (1977), precluded any ruling on the merits of the claim.

The state court denied habeas relief on this claim without specifying whether it was ruling on the merits or on the basis of procedural default. Thus, we must interpret the silence according to the analysis set forth in *O'Bryan v. Estelle,* 714 F.2d 365, 384 (5th Cir.1983), and in *Preston v. Maggio,* 705 F.2d 113, 116 (5th Cir.1983). *See supra* § IV.

■ First, we note that Texas courts stringently apply the contemporaneous objection rule in the context of improper identification. Without an objection to an in-court identification or to testimony based on an impermissibly suggestive identification procedure, no error is preserved. *See, e.g., Johnson v. State,* 504 S.W.2d 493, 495 (Tex.Crim.App.1974) (no objection to testimony by victims who identified defendant soon after robbery); *Pete v. State,* 501 S.W.2d 683, 686–87 (Tex.Crim.App.1973), *cert. denied,* 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1974); *Hall v. State,* 490

S.W.2d 589, 592 (Tex.Crim.App.1973) (no objection to in-court identification by witness who had been shown only one photograph); *Phillips v. State,* 488 S.W.2d 97, 99 (Tex.Crim.App.1972) (no objection to testimony by witness who had identified defendant in one-on-one confrontation). Second, the state court was aware of the procedural default. In its brief, the State argued that no error was preserved because of the lack of objection to the identification procedure. As Stokes has failed to show that we should excuse his procedural default, we hold that it bars our review of his claim on the merits.

## VI. Ineffective Assistance of Counsel

Stokes parades before us a long list of failures by his counsel,[2] arguing that, individually or cumulatively, they deprived him of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments. These allegations received a full evidentiary hearing before the magistrate, who ultimately found that Stokes' counsel did not render ineffective assistance. The district court adopted that finding and we agree that Stokes failed to make the showing required by *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

■ Only one of the ineffective assistance claims—the failure of counsel to object to the questions and comments on his

**2.** 1. Failure to locate and call alibi witnesses
2. Failure to object to a one-man "show-up"
3. Failure to obtain results of a test matching door marks with Stokes' screwdriver
4. Failure to file a written motion for a continuance
5. Failure to obtain a copy of the indictment
6. Failure to object to the admissibility of the screwdriver and gloves
7. Failure to introduce Stokes' clothing into evidence
8. Failure to object to the police offense report as hearsay
9. Failure to object to questions and comments concerning Stokes' post-arrest silence

10. Failure to move for a judgment of acquittal on grounds that Stokes lacked the intent to commit theft
11. Failure to research prior convictions
12. Failure to challenge the habitual offender portion of the indictment on the basis that the first conviction was void
13. Failure to object to the use of copies of Stokes' previous convictions
14. Failure to raise, on motion for reconsideration, the State's lack of evidence that Stokes committed burglary (second conviction) after the conviction for the first burglary became final

post-arrest silence—warrants serious discussion. We consider briefly the other instances of alleged ineffective assistance in the margin.[3]

**3.** Because of our disposition of Stokes' challenge to his enhanced sentence, see *infra* § VII, we need not consider any claims of ineffective assistance arising out of the sentencing phase. See *supra* note 2 (alleged failures 11–14).

### A. Failure to Locate and Call Alibi Witnesses

At the hearing on ineffectiveness, Stokes' counsel testified that Stokes provided the name of only one alibi witness—Paul Barfield. This was confirmed by the attorney's notes taken during his initial meeting with Stokes. Defense counsel located and subpoenaed a Paul Barfield, but apparently he was not the same Paul Barfield that Stokes sought.

According to Stokes, he had met Barfield near some unnamed apartments and, because his car would not start, he was walking in the nearby neighborhood. He claimed that he had asked counsel to talk to witnesses who had seen him elsewhere at the time of the attempted burglary, as well as to other witnesses who knew his car would not start and had seen him use the gloves and screwdriver "to jiggle the wires and get the car started." He admitted, however, that he never asked counsel to examine the car and to see whether it would start. Stokes' attorney testified that he attempted to investigate the alibi story of the non-starting car, but that Stokes would not allow him to do so because the car contained evidence of other burglaries.

The district court adopted the finding of the magistrate, who found Stokes' counsel to be more credible than Stokes. No deficiency in professional performance has been demonstrated.

### B. Failure to Object to Identification Procedure

We do not consider the failure of Stokes' counsel to object to identification testimony to be outside the range of professional competence. Although an objection would have preserved error, see *supra* § V, the failure to do so falls within the presumption that counsel was exercising reasonable professional judgment. We have previously noted that, under circumstances similar to this case, one-man showups are permissible. *See Frank v. Blackburn,* 605 F.2d 910, 912–13 (5th Cir.1979), *cert. denied,* 454 U.S. 849, 102 S.Ct. 148, 70 L.Ed.2d 123 (1981); *Allen v. Estelle,* 568 F.2d 1108, 1112–13 & n. 10 (5th Cir.1978); *see also United States v. Wilson,* 435 F.2d 403 (D.C.Cir.1970) (per curiam).

### C. Failure to Obtain Results of a "Screwdriver Test"

Stokes claims that, the results of a test comparing the pry marks on the Shumaker door with his screwdriver would show that a different tool had been used in the burglary attempt. This claim has no merit. We do not, nor did counsel at the time, have any reason to believe this would have been a fruitful inquiry.

### D. Failure to File Written Motion for Continuance

The record shows that Stokes' counsel orally moved for a continuance before trial. Stokes fails to explain how a written motion would have been any more beneficial.

### E. Failure to Obtain a Copy of the Indictment

Stokes had notice of the charges against him, see *supra* § II, and the record reflects that he was served with a copy of the indictment. The claim has no merit.

### F. Failure to Object to Admission of Gloves and Screwdriver

We perceive no basis for an objection that would have succeeded in suppressing Stokes' gloves and screwdriver, which were obtained incident to a lawful arrest. Accordingly, Stokes has failed to show any deficiency in counsel's performance.

### G. Failure to Introduce Clothing

Sheila Shumaker was more sure of her observation of the clothing worn by the man at the rear of her house than she was of the man's facial features. Stokes' counsel clearly made a sound strategic choice to concentrate on the witnesses' inability to testify with confidence that Stokes was the man they had seen prying and fleeing, rather than to focus on the clothes, which would readily have been identified by the witnesses. At the hearing, Stokes' counsel stated:

When I interviewed Mr. Stokes ... [he] identified his clothing to me of what he was wearing, which fit the description of what the other witnesses said, and I wanted to stay away from the clothes because ... Shiela Schumacher [sic] ... was so positive on the clothes and she changed her mind on the facial features, so I did not want to get involved in the clothes issue.

### H. Failure to Object to a Police Report as Hearsay

We may dispose of an ineffective assistance claim "for either reasonable performance of counsel or lack of prejudice, without addressing the other." *Murray v. Maggio,* 736 F.2d 279, 282 (5th Cir.1984) (per curiam) Without deciding whether counsel's performance was deficient by failing to object to the officer's report, it is clear that Stokes suffered no prejudice. Even had the hearsay objection been made, there is no reasonable probability that the result of the proceeding would have been any different. The police report was merely cumulative of the arresting officer's testimony at trial. *See Nelson v. Estelle,* 642 F.2d 903, 908 (5th Cir.1981).

### I. Failure to Move for Acquittal

Stokes asserts that his counsel should have moved for a judgment of acquittal on the grounds that there was insufficient evidence showing that Stokes had the specific intent to commit theft. Counsel was not deficient in this regard and Stokes would not have benefited from the motion. The circumstantial evidence supported a rational juror's finding beyond a reasonable doubt that Stokes had the requisite intent. See *supra* § III.

We cannot engage in a presumption that Stokes' counsel's failure to object to the *Miranda/Doyle* violation might be considered sound trial strategy. At the ineffectiveness hearing he testified that he did not recognize a problem with the questions and comments on Stokes' post-arrest silence. "I did not at the time of trial feel like that they were comments on the evidence, or on his refusal or failure to testify." We will assume, without deciding, that the failure to object fell beneath an objective standard of reasonable professional assistance.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland v. Washington,* —— U.S. ——, ——, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984). *See Ricalday v. Procunier,* 736 F.2d 203, 208 (5th Cir.1984).

We note that Stokes did not take the stand to offer an alibi, as he and counsel planned before trial. Thus, his post-arrest silence was not used to impeach an exculpatory explanation. *See United States v. Smith,* 635 F.2d 411, 412–14 (5th Cir.1981) (per curiam) (Unit B); *United States v. Espinosa-Cerpa,* 630 F.2d 328, 335 (5th Cir.1980). We view the mention of Stokes' silence to be less damaging to his defense than the properly admitted testimony of the arresting officer in stating that Stokes gave one explanation for his presence, rejected it, gave a different explanation, then admitted that the explanations were false. *See United States v. Shaw,* 701 F.2d 367, 383 (5th Cir.1983) (police officer's mention of defendant's post-arrest silence had minuscule effect "compared to the prejudicial effect [defendant] caused himself by repeatedly changing his version of the events"). In light of Stokes' contradictory statements just before his arrest, his identification soon after the attempted burglary by two eyewitnesses, and the presence of burglary tools on his person, we conclude that the prejudicial effect of the comments on his post-arrest silence did not undermine confidence in the outcome of the trial. Stokes has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* —— U.S. at ——, 104 S.Ct. at 2068. *See Murray v. Maggio,* 736 F.2d 279, 283 (5th Cir.1984); *Ricalday v. Procunier,* 736 F.2d 203, 208–09 (5th Cir.1984).

## VII. Enhanced Punishment under the Habitual Offender Statute

After the jury found Stokes guilty of attempted burglary with intent to commit theft, the trial proceeded to a second phase, in which the prosecution attempted to prove that he should be sentenced as an habitual offender, having been convicted of three felonies less than capital. *See* Tex. Penal Code Ann. § 12.42(d) (replacing Art. 63, Tex.Penal Code Ann.) The State introduced evidence showing that Stokes had been convicted of burglary with intent to commit theft in 1958 and again in 1971. The court sentenced him to life imprisonment after the jury found that he had been convicted of all three felonies.

Stokes argues that the enhanced sentence was improper because the State failed to introduce any evidence that he committed the second felony after the first felony conviction had become final. We agree. *See French v. Estelle,* 692 F.2d 1021 (5th Cir.1982), *cert. denied,* 461 U.S. 937, 103 S.Ct. 2108, 77 L.Ed.2d 313 (1983).

The Court of Criminal Appeals affirmed Stokes' sentence, relying on a presumption that the offense underlying the second conviction was committed within the five-year limitations period preceding the filing of the indictment. *See Villareal v. State,* 468 S.W.2d 837 (Tex.Crim.App.1971). We are not bound by this finding, but must make an independent "determination of the sufficiency of the evidence in a federal habeas corpus challenge." *French,* 692 F.2d at 1024. *See Jackson v. Virginia,* 443 U.S. 307, 323, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). Our difficulty with the presumption employed by the Texas court is that the predicate for the presumption, i.e. the limitation period and the indictment for

the 1971 conviction, were not before the jury. And under Texas law it is the jury that by its verdict must find the elements required for enhanced punishment.

■ Commission of the second felony after conviction for the first had become final is an essential element required for the enhanced punishment. *See Hickman v. State*, 548 S.W.2d 736 (Tex.Crim.App.1977); *Wiggins v. State*, 539 S.W.2d 142 (Tex. Crim.App.1976). Yet the State failed to introduce any evidence of the date Stokes committed the second felony. Since the State produced no evidence as to this essential element, it is impossible to say that a "rational trier of fact could have found beyond a reasonable doubt the facts necessary to support the life sentence." *French*, 692 F.2d at 1024. Accordingly, the double jeopardy clause bars any future use of the 1971 felony conviction to enhance punishment. Because of the lack of evidence on an essential element, we remand to the district court with directions to grant the writ of habeas corpus, relieving Stokes from his enhanced punishment. We need not discuss his other claims arising out of the punishment phase of trial.

AFFIRMED in part, REVERSED in part.