Willie Lawrence CELESTINE,
Petitioner-Appellant,

v.

Frank BLACKBURN, Warden,
Louisiana State Penitentiary,
Respondent-Appellee.

No. 84–4745.

United States Court of Appeals,
Fifth Circuit.

Dec. 28, 1984.

---

David H. Clarke, Lafayette, La., Millard C. Farmer, Jr., Joseph M. Nursey, Atlanta, Ga., for petitioner-appellant.

J. Nathan Stansbury, Dist. Atty., Lafayette, La., for respondent-appellee.

Before WILLIAMS, JOLLY and HILL, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The district court denied, without an evidentiary hearing, the petition of Willie L. Celestine for habeas corpus relief from his Louisiana murder conviction and death sentence. This court stayed appellant's execu-tion to permit full briefing and oral argument on his claims of constitutional infirmity in the selection of jurors at his trial and in the performance of his lawyer during the penalty phase of that proceeding. For the reasons that follow, we affirm the district court's judgment and vacate our stay.

## I. FACTS AND PROCEEDINGS

### A. *Basis for the Murder Conviction and Death Sentence*

Some time between five-thirty and seven o'clock in the morning of September 13, 1981, appellant raped and killed Mrs. Marcelianne Richard, an 81 year-old woman, at her home in Lafayette Parish, Louisiana. Appellant had ingested alcohol and amphetamines during the previous night and earlier morning of September 13. A friend dropped him off near his house, and he walked toward it until he saw a light shining in Mrs. Richard's residence. Appellant did not know Mrs. Richard. He entered the house through a bathroom window, leaving a latent handprint on the lavatory. He found Mrs. Richard, who had risen early to take a trip to visit her sisters in Texas.

Appellant raped Mrs. Richard and strangled her, fracturing a bone in her neck in the process. The nature of the break indicated that appellant applied tremendous force in choking the victim. Appellant also severely disfigured her face and fractured seven ribs on both sides of her body. Mrs. Richard suffered internal injuries as a consequence of the beating. She died before seven o'clock, when friends arrived to take her on the Texas visit. Appellant's mother opened the door to the Celestine house for appellant when he arrived home at seven o'clock.

In the late afternoon of the same day, appellant was arrested at his home. After receiving *Miranda* warnings at the police station, appellant voluntarily confessed to raping two other women as well as Mrs. Richard. All three women lived in appellant's neighborhood, and the three attacks occurred within a relatively short period.

The police recorded the confession on a cassette tape. A Lafayette Parish jury subsequently convicted appellant of two counts of aggravated rape. Those trials preceded the conviction that he now challenges.

### B. *The Trial and Post-Conviction Proceedings*

A Lafayette Parish jury found appellant guilty of first-degree murder and recommended imposition of the death penalty. The jury supported its death penalty recommendation by finding the presence of three statutory aggravating circumstances: (1) commission of aggravated rape in the course of the murder, (2) previous conviction of an unrelated aggravated rape, and (3) committing the murder in an especially cruel manner.[1] The trial court accordingly sentenced appellant to death.

Appellant's efforts to overturn his conviction and sentence have proved unavailing. On direct appeal, the Louisiana Supreme Court affirmed the conviction and sentence. *State v. Celestine*, 443 So.2d 1091 (1983), *cert. denied*, — U.S. —, 105 S.Ct. 224, 83 L.Ed.2d 154 (1984). That court also refused post-conviction relief. Having exhausted his state remedies, appellant filed this habeas corpus petition under 28 U.S.C. § 2254 (1982), in the United States District Court for the Western District of Louisiana. The district court denied the petition without holding an evidentiary hearing. In this appeal, appellant urges that the district court erred in not finding merit in his ineffective assistance of counsel claim, in not conducting an evidentiary hearing on that claim, in dismissing his claim of juror bias against him, and in finding no violation of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), in the exclusion of a juror for cause.

## II. THE MERITS

### A. *Ineffective Assistance in the Penalty Phase*

Appellant contends that his attorney's failure to present evidence of mitigating circumstances at the sentencing portion of his trial denied him the effective assistance of counsel that the Sixth Amendment guarantees him. We perceive no merit in that claim. We also agree with the district court that the claim did not require an evidentiary hearing.

 Our analysis necessarily flows from *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the Court established a two-prong test for deciding ineffective assistance claims. Under that test, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. — U.S. at —, 104 S.Ct. at 2064. A court need not consider the deficiency prong if it concludes that the defendant has demonstrated no prejudice. *Id.* at —, 104 S.Ct. at 2070. The defendant, moreover, may not simply allege but must "affirmatively prove" prejudice. *Id.* at —, 104 S.Ct. at 2067. In a challenge to a death sentence, the "question is whether there is a reasonable probability that, absent the [counsel's] errors, the sentencer—including the appellate court, to the extent it independently reweighs the evidence—would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." *Id.* at —, 104 S.Ct. at 2069. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at —, 104 S.Ct. at 2068.

 Appellant contends that his lawyer's failure to put on evidence at the penalty

---

1. The Louisiana statute lists nine categories of "aggravating circumstances" that juries may consider in deciding whether or not to recommend imposition of capital punishment. *See* La.Code Crim.Proc.Ann. art. 905.4 (West 1984). The Louisiana Supreme Court recently struck down, as unconstitutionally vague, a portion of art. 905.4(c). *See State v. David*, No. 82–KA–0150, slip op. (La. Nov. 26, 1984) (holding unconstitutional: "has a significant prior history of criminal activity" and setting aside death sentence of defendant who received sentence solely on that ground). Since the jury in this case did not find that the constitutionally infirm circumstance existed, *David* does not implicate appellant's death sentence.

phase prejudiced his ability to avoid the death sentence. The nature of the evidence appellant asserts his attorney should have presented, however, belies the argument. That evidence would have consisted virtually entirely of the testimony of appellant's relatives, friends, and employers who would have asserted appellant's affection for his family and friends, their affection for him, his willingness to work hard without complaint, his conscientiousness and dependability, his faith, and his non-violent disposition. Some of the witnesses would have pleaded for appellant's life. Other evidence would have shown that tests in 1973 showed appellant to have an I.Q. of 69, and that he committed the murder at the age of 25.

In light of the proffered evidence, we believe that our decision in *Willie v. Maggio,* 737 F.2d 1372 (5th Cir.1984), controls our disposition of appellant's claim here. A Louisiana jury had convicted Willie of murder and recommended the death penalty, finding aggravating circumstances in that Willie had committed the murder in the course of aggravated rape and in an especially heinous, atrocious, or cruel manner. Willie grounded his petition for a writ of habeas corpus in federal court in part on his allegation that his trial lawyer had failed to present evidence of mitigating circumstances. The evidence that Willie claimed his lawyer should have presented closely resembled the evidence that appellant asserts his counsel should have submitted to the jury. In rejecting Willie's claim, this court observed:

We do not believe that the outcome of the jury's deliberations, in light of the state's evidence showing the aggravated circumstances of the crime, would have been altered by other defense witnesses who merely told more about the defendant's troubled adoles[c]ence. The evidence presented by the state in support of its request for the death penalty was not only substantial but undoubtedly left a deep impression on the jury....

In light of the foregoing, we conclude that even if Willie's counsel had offered the mitigating evidence that Willie has discussed in his petition, that there is no reasonable probability that the omitted evidence would have changed the jury's conclusion that, in the face of the overwhelming aggravating circumstances, the death penalty should be invoked. *Strickland v. Washington,* 104 S.Ct. at 2071.

*Willie,* 737 F.2d at 1394. See also *Milton v. Procunier,* 744 F.2d 1091, 1100 (5th Cir. 1984), where we held that "[t]he decision to not offer evidence at the punishment phase was not defective in the constitutional sense."

We reach the same conclusion in this case. The testimony of appellant's parents could have added little to the penalty phase of the trial; both had just before testified during the guilt phase. The evidence of appellant's I.Q. would also have carried insignificant further weight in view of his lawyer's argument to the jury regarding appellant's psychological problems, impaired mental state during the crime, and his underprivileged background.[2] More-

---

**2.** Appellant's trial counsel submitted, and the court presented to the jury for its consideration, the following specifications of mitigating circumstances:

1.

The youth of the defendant to be considered in relation to the possible sentence, along with the probability of reform and future gains in maturity.

2.

The lack of guidance, role models and opportunity have produced a depressed and frustrating social, as well as economic background, causing severe distortion of the defendant's values and judgment.

3.

The psychological condition of the defendant at the time in question rendered his perceptions, values and judgment decisions completely distorted in terms [of] acceptable values.

4.

At the time in question, the defendant was under the influence of disabling drugs and alcohol, more specifically an[ ] unidentified form of "speed"[,] marijuana, as well as considerable amounts of alcohol, all of which cumulatively produced an extended period within which defendant was unable to control or recall his actions.

over, the aggravating circumstances in this case exceeded those that the jury found to exist in *Willie*. The grisly manner of Mrs. Richard's death needs no reiteration. As the district court found, any evidence that appellant could have introduced in mitigation would have amounted to a plea for mercy. On the facts of this case, counsel's failure to put on such evidence did not so prejudice appellant as to violate appellant's constitutional right to effective counsel.[3]

▉▉▉ Nor do we find fault in the district court's failure to hold an evidentiary hearing. Appellant does not suggest that a live hearing of the evidence that he describes in his petition would have assisted the district court in evaluating his claim of prejudice. In general, a district court need not conduct such a hearing where doing so would not produce further evidence in support of specific, non-conclusory allegations. Conclusory allegations in a petition for habeas corpus do not warrant such a hearing. *Green v. McGougan*, 744 F.2d 1189, 1191 (5th Cir.1984); *Knighton v. Maggio*, 740 F.2d 1344, 1349 (5th Cir.1984). In this case, appellant alleges generally that a hearing would elicit further evidence of prejudice. Such a bare claim did not provide grounds for an evidentiary hearing; neither, therefore, can it support the specific claim of prejudice to establish the threshold showing that would call for such a hearing. Where, as here, the evidence that a defendant claims his counsel should have introduced does not demonstrate prejudice and his allegation that other proof of prejudice exists is only conclusory, the district court in its discretion could properly refuse an evidentiary hearing.[4]

### B. *Juror Bias*

Appellant next asserts that the trial court improperly failed to exclude two jur-

ors. The first juror harbored bias against him, he claims, because of her relationships with the prosecutor and the victim's granddaughter. The bias of the second juror appeared in his admission on voir dire of racial prejudice against blacks generally. We consider the claims as to each juror in turn.

### 1. *Mrs. Broussard*

▉▉▉ During jury selection, Mrs. Broussard admitted that she knew both the prosecuting attorney and the granddaughter of Mrs. Richard, the victim. She stated that the prosecutor had represented her father as an attorney on occasion but that the prosecutor had not represented her and that his representation of her father would not affect her ability to remain impartial. Her responses to the prosecutor's questions regarding the granddaughter, however, revealed a closer relationship. Because it is important to consider the critical passages of the voir dire on the latter relationship, we quote extensively from the examination. The first excerpt represents most of the prosecutor's interchange with Mrs. Broussard:

> MR. HARSON: Would that factor, or the fact that you know that person, would that have any bearing upon your ability to be impartial in this case?
>
> MRS. BROUSSARD: I don't think so.
>
> MR. HARSON: How well do you know this granddaughter?
>
> MRS. BROUSSARD: I know her pretty well. She's a friend.
>
> MR. HARSON: You went to school with her, or she's just an acquaintence?
>
> MRS. BROUSSARD: Well, she's friends with—She went to school with my children.

---

3. Because we find no prejudice, we need not determine whether trial counsel's performance at the penalty hearing did not measure up to the requisite standard.

4. Appellant relies on *Narcisse v. Maggio*, 725 F.2d 969 (5th Cir.1984), as support for a remand to conduct an evidentiary hearing. As the *Narcisse* panel noted, however, the remand for a

hearing on the petitioner's ineffectiveness claim reflected the need to move forward with developing the facts pending the outcome of two cases then before the Supreme Court. One of those cases, *Strickland v. Washington*, established the principles on which we rely in reaching our decision here. *Narcisse*, therefore, constitutes no precedent for a remand in this case.

MR. HARSON: Her daughter or granddaughter?

MRS. BROUSSARD: Her granddaughter.

MR. HARSON: Do you know anything about the facts of this particular case?

MRS. BROUSSARD: No, not really.

MR. HARSON: Have you ever discussed the matter with this granddaughter?

MRS. BROUSSARD: No.

MR. HARSON: And you said when I asked you if that knowledge would bear on your ability to be impartial you said you weren't sure, and understandably at this point in time, do you feel that you could put aside any relationship that you had with this particular granddaughter and look impartially at the evidence in this case and base a decision solely on the evidence regardless of any kind of relationship?

MRS. BROUSSARD: Right. Yes, sir.

MR. HARSON: You think you could.

MRS. BROUSSARD: Yes, sir.

\* \* \* \* \* \*

In response to defense counsel's queries, she answered:

MR. BEARD: And in spite of all these facts, you feel like you can be fair and impartial towards the accused and not favor the prosecution side of this case?

MRS. BROUSSARD: I would try to do my civic duty and be fair, yes.

MR. BEARD: I understand that. But wouldn't it be very hard to attempt to achieve an impartiality in this matter and give both sides, but in this case primarily the accused, a fair and impartial trial?

MRS. BROUSSARD: I will try to do so, sir.

MR. BEARD: But wouldn't it be very difficult on your part?

MRS. BROUSSARD: I would believe so.

MR. BEARD: To such an extent that it's almost impossible, wouldn't you say?

MRS. BROUSSARD: I wouldn't say impossible. I would—

MR. BEARD: Nothing is impossible, but it's very impractical, isn't it?

MRS. BROUSSARD: —I would try to do my civic duty. Sort of impractical.

MR. BEARD: Yes, you would be pulling for the prosecution, wouldn't you? I would.

MRS. BROUSSARD: I would try to be fair to both sides; however, I couldn't say that I would actually pull for either side until after I would hear the testimony.

\* \* \* \* \* \*

MR. BEARD: Do you think that you could at all possibly give Willie that unblemished presumption [of innocence] which you should be able to do were you not associated with the people and the facts in this case as you are?

MRS. BROUSSARD: Well, like I said, I've never discussed the item with the granddaughter.

MR. BEARD: .... They must give him that presumption of innocen[c]e in unequivocal terms. Can you do that?

MRS. BROUSSARD: I would try.

MR. BEARD: But the question is can you do it under the circumstances?

MRS. BROUSSARD: I would try it as a case. I would try very hard to put my personal feelings aside.

MR. BEARD: Do you think you can put your personal feelings aside? Is that possible under the circumstances?

MRS. BROUSSARD: I don't know.

\* \* \* \* \* \*

Mrs. Broussard did not respond when defense counsel asked whether she would favor the prosecution, but she concluded that she would give it her "best shot". Defense counsel did not ask the court to excuse Mrs. Broussard for cause, however, until the court itself posed some questions:

THE COURT: I have a question that I want to ask Mrs. Broussard. You said that you would give it your best shot. In a trial such as this, the only issue is innocen[c]e or guilt, and you must put aside any factor that would tend to influence your decision other than from the

evidence that's been adduced. The fact that you know Mr. Harson or he has represented your father, if you are convinced that this man is innocent, would it embarass you to find him not guilty when you see Mr. Harson?

MRS. BROUSSARD: No, sir.

THE COURT: Would that bother you at all?

MRS. BROUSSARD: No, sir.

THE COURT: Of if you saw the victim's granddaughter?

MRS. BROUSSARD: I haven't seen her in a while.

THE COURT: Then you would not let those two factors I have just named influence you at all in determining his innocen[c]e or guilt?

MRS. BROUSSARD: No, sir.

THE COURT: The fact that you know the granddaughter and the fact that you know Mr. Harson?

MRS. BROUSSARD: Well, the way I feel, if he's right, I would vote him right, but if he done wrong, I would vote him wrong.

Defense counsel challenged Mrs. Broussard for cause, but the trial judge declined to excuse her:

THE COURT: The court feels that just as all of the others that we have to accept what they tell us, and from my interrogation of her, I can find no reason why she can't serve. In other words, it's very hard to find a perfect Juror. But one who is candid I would trust a lot more than one who would not tell you. I think she has made a complete disclosure. I will deny the motion.

Defense counsel then peremptorily challenged Mrs. Broussard. He exhausted his peremptory strikes before jury selection ended.

We agree with the district court that no constitutional violation arose from the trial court's refusal to excuse Mrs. Broussard for cause. The principles upon which this conclusion is based need explanation. In *United States v. Nell*, 526 F.2d 1223 (5th Cir.1976), a direct federal appeal, we stated that "as a general rule it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause, for this has the effect of abridging the right to exercise peremptory challenges." 526 F.2d at 1229 (citing *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)). That ruling did not rest on constitutional grounds but on the common law principle that the "denial or impairment of the right is reversible error without a showing of prejudice." *Swain*, 380 U.S. at 219, 85 S.Ct. at 835 (noting that Constitution confers no right to peremptory strikes). We suggested as much in *Willie v. Maggio*, a § 2254 case, where we declined "to consider the extent to which *Nell* is applicable to federal habeas proceedings." *Willie*, 737 F.2d at 1382 n. 13. In § 2254 proceedings, then, the question of whether "impairment of the right" contravenes a defendant's Sixth Amendment right to an impartial jury remains an open one.

This case, however, does not present an apt occasion for providing a definitive answer. Even assuming that forcing a defendant to expend a strike implicates the Sixth Amendment, we may find constitutional error only if the trial court's refusal to excuse Mrs. Broussard exhibits manifest error. *See Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961); *United States v. Dozier*, 672 F.2d 531, 547 (5th Cir.1982) (direct federal appeal citing *Irvin*); *cf., e.g., Smith v. Phillips*, 455 U.S. 209, 218, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982) (citing 28 U.S.C. § 2254 presumption of correctness of state court factual findings). We find no such error.

Although some of Mrs. Broussard's answers suggested that her emotions might affect her, she consistently stated that her feelings would not so influence her as to prejudice her against appellant. She had not discussed the murder with the granddaughter, and she repeatedly denied bias. Moreover, this case does not present a situation in which a court must infer or presume juror bias. *See generally De La Rosa v. Texas*, 743 F.2d 299, 306 (5th Cir.

1984) (citing cases involving presumptions or inferences of juror bias). Mrs. Broussard was not related to the prosecutor or to the granddaughter. Nor had the prosecutor acted as her attorney. Such attenuated associations do not create a presumption of bias against a defendant. *Cf., e.g., Nell,* 526 F.2d at 1229 n. 8 (indicating as instances requiring presumption of bias relationships between prospective juror and trial participant or victim such as kinship, master-servant, interest in same claim, and others that the court enumerated in *United States v. Haynes,* 398 F.2d 980 (2d Cir. 1968), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 124 (1969)). The district court properly held no disqualifying bias was shown.

### 2. *Mr. Lemmon*

This challenge for bias concerns Mr. Lemmon's admission that he harbored prejudice against blacks, but not against appellant in particular. Defense counsel's voir dire interrogation revealed that bias:

> MR. BEARD: The fact that Willie is black, would that in any manner whatsoever make it more difficult for you to be fair and impartial than if he were say white? I know that's a question that may be embarrassing, but I want you to be truthful with me, because there's no harm in being truthful. I mean we have a great responsibility here, you and me.
>
> MR. LEMMON: That's difficult for a person to answer, like you said.
>
> MR. BEARD: What's that?
>
> MR. LEMMON: That's difficult for a person to answer.
>
> MR. BEARD: I understand that.
>
> MR. LEMMON: I'm not particularly prejudice[d] against this man, but I am prejudice[d], if that's the question you're asking.
>
> MR. BEARD: Yes. You are prejudice[d], racially?
>
> MR. LEMMON: Yes, sir.

Mr. Lemmon later indicated that he would "[h]onestly and sincerely try" to put aside any ill-feelings against blacks and that he would "listen to [his] conscience" in deciding the case even if all the other jurors disagreed with him. Defense counsel neither asked the trial court to excuse Mr. Lemmon for cause nor exercised a peremptory strike against him. Mr. Lemmon did serve on the jury that convicted appellant.

The failure of appellant's lawyer to challenge Mr. Lemmon constituted a procedural default under Louisiana law, *see* La.Code Crim.Proc. art. 800 (West Supp.1984), and thus triggered application of the cause and actual prejudice test of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). To secure federal habeas review of his juror bias claim, in other words, appellant had to show that his counsel had cause for not challenging and that the omission actually prejudiced appellant's defense. *Id.* at 84, 97 S.Ct. at 2505; *see also, e.g., Stokes v. Procunier,* 744 F.2d 475, 479–80 (5th Cir.1984).

Appellant showed no cause for his trial lawyer's procedural default. Mr. Lemmon's responses to the attorney's voir dire inquiries showed the grounds for raising a challenge against the prospective juror. *See, e.g., Stokes,* 744 F.2d at 480; *O'Bryan v. Estelle,* 714 F.2d 365, 385 n. 15 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Moreover, defense counsel sought and elicited from Mr. Lemmon responses that indicated the prospective juror's determination to decide the case on the evidence, to discount the testimony of police officers, to presume appellant innocent until proven otherwise, and to vote for imposition of the death penalty only if the facts justified it. In these circumstances, it appears that appellant's trial counsel reached a strategic decision that Mr. Lemmon would serve without partiality and, more important, might accept the main defense theory that the testimony of the police officers did not warrant full credence. Such judgments of counsel bind a defendant, and they constitute the very sort of waiver that the Supreme Court contemplated in fashioning the cause prong of the *Sykes* test. *See Sykes,* 433 U.S. at 90 n. 14, 97 S.Ct. at 2508 n. 14 (emphasizing

need to recognize "the burden on a defendant to be bound by the trial judgments of his lawyer"); *Huffman v. Wainwright,* 651 F.2d 347, 351 (5th Cir.1981) (noting that strategic failure to comply with procedural rules militates against finding cause for default).[5]

### C. *Improper Exclusion of Prospective Juror for Cause*

■■ Appellant's asserted final claim for overturning the judgment of the district court assails the exclusion of Mrs. Holmes because of her scruples against imposition of the death penalty. Appellant thus invokes *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), in which the Court held that the Constitution permits striking jurors on the ground that they oppose capital punishment only where they indicate:

> (1) that they would *automatically* vote against imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's *guilt.*

391 U.S. at 522 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in original). We find no merit in appellant's claim.

Mrs. Holmes's voir dire testimony unmistakably shows that she would under no circumstances have voted for the death penalty:

> MR. BEARD: In other words, you're telling us that you would never include or consider the death penalty?
>
> MRS. HOLMES: No, sir. That's correct.
>
> \*　\*　\*　\*　\*　\*
>
> MR. HARSON: [A]ssuming the defendant is found guilty of the charge, and you're instructed by the Court that one of the possible penalties to be imposed is that of death, in the course of your fulfilling your duties as a Juror and deliberating on the penalty to be recommended by the Jury, would you be able to accept that instruction by the Court and consider the imposition of the death penalty?
>
> MRS. HOLMES: No, sir.
>
> MR. HARSON: .... And you could not under any circumstances come back with a recommendation of death in the case, regardless of what the facts and circumstances are which are brought out?
>
> MRS. HOLMES: That's right.

We believe that, even under the most liberal reading of *Witherspoon, see generally* Schnapper, *Taking* Witherspoon *Seriously: The Search for Death-Qualified Jurors,* 62 Tex.L.Rev. 977 (1984), Mrs. Holmes committed herself to vote automatically against imposition of capital punishment at appellant's trial. The district court correctly determined that no constitutional violation arose from the trial court's exclusion of Mrs. Holmes for cause.

### III.

We find that appellant received a constitutionally sound and fundamentally fair trial as against his claims of constitutional infringement. Further, the district court was not required to hold an evidentiary hearing on his claims. We affirm the decision of the district court and vacate our stay.

Judgment AFFIRMED and stay of execution VACATED.

---

**5.** Given that we find no cause for counsel's omission, we do not decide whether the default prejudiced appellant's defense. Nor do we reach the further procedural default that one of appellant's current lawyers committed in failing to raise the issue of Mr. Lemmon's bias on direct appeal to the Louisiana Supreme Court. Finally, we note the reasonable likelihood that Mr. Lemmon was not subject to challenge for cause in any event.